24

Submitted on record and briefs February 2, 2001, affirmed January 23, 2002

## In the Matter of the Marriage of

### Karen Ann DILLARD,
*Respondent,*

*and*

### Carvel Gordon DILLARD,
*Appellant.*

## 96 DR 0949; A110428

39 P3d 230

Carvel Gordon Dillard filed the brief *pro se*.

Clayton C. Patrick filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

## DEITS, C. J.

■ ■    In this custody modification proceeding, father appeals after the trial court granted mother's motion to dismiss for insufficient evidence and denied father's motion to modify custody. We review for errors of law to determine whether father presented a *prima facie* case, viewing the evidence in the light most favorable to father, *Nolan v. Jackson National Life Ins. Co.*, 155 Or App 420, 433, 963 P2d 162 (1998), *rev den* 328 Or 275 (1999); *Gearhart v. Employment Div.*, 99 Or App 601, 603-04, 783 P2d 536 (1989), *rev den* 310 Or 70 (1990),[1] and affirm.

The original judgment dissolving the parties' marriage was entered in June 1997. Sole custody of the parties' two children was awarded to mother. In June 1999, father commenced this custody modification proceeding.

At trial, father introduced the following evidence. As of the time of the modification trial, the parties' two sons were six and nine years old. Under the original dissolution judgment, father was entitled to parenting time of every other weekend and half of the holidays. In actual practice, however, father had the children with him half of the time. Father was extensively involved with his sons' hobbies and sports activities. Father testified that he takes the children

---

[1] ORAP 5.45(5) requires parties to set out the standard of review that applies to each assignment of error, together with legal authority for each applicable standard. Father sets out no standard of review, and mother states that the standard of review is *de novo*, citing ORS 19.415(3). Had the trial court entered a judgment after hearing all the evidence from both parties, we would review the record *de novo*, as mother suggests. *E.g.*, *State ex rel Johnson v. Bail*, 325 Or 392, 394-95, 938 P2d 209 (1997). As ORAP 5.45(5) indicates, however, parties are responsible for identifying the standard of review applicable to each *assignment of error*. Each assignment of error must "identify precisely the legal, procedural, factual, or other ruling that is being challenged." ORAP 5.45(3). In this case, although the *case* is an equity case, which entails a *de novo* standard of review in some procedural postures, the *ruling* challenged is the granting of a motion to dismiss for insufficient evidence, which we review for errors of law, viewing the evidence in the light most favorable to the nonmoving party. The requirement that parties to an appeal set out the proper standard of review for each assignment of error is not a mere formality. *See State v. Schwartz*, 173 Or App 301, 305-06 n 2, 21 P3d 1128 (2001) (stating that the "requirement serves the purpose of causing the parties to frame their arguments appropriately to the types of rulings being challenged. It also helps to identify any differences that the parties may have regarding the proper scope of review * * *.").

"every place that I'm going" and that he involves them in his hobbies such as fishing, which they enjoy. He further testified that he never left the children with a babysitter who was not a member of his family. Father also described chores that he required the children to do and how he helped them with their homework. Father and his sister both testified that father cared for the children almost exclusively when they were sick.

The children were born in Grants Pass and lived there, except for two one-year periods, until September 1999. At the time of the original dissolution judgment, both mother and father lived in Grants Pass. The children had close relationships with father's mother and sister who also lived in the Grants Pass area. In September 1999, however, mother remarried and moved with the children to her new husband's home in Sandy. Father testified that, since the move, the older child has become withdrawn and irritable and has not wanted to return to his mother's home after parenting time with father. Although father testified that the younger child has said he would prefer to live in Grants Pass, father has not observed in the younger child any behavior problems that were, in father's view, caused by the move. It takes about five and a half hours for father to drive from Grants Pass to Sandy, and he had made the trip to bring the children to Grants Pass for parenting time only three times between August 1999 and February 2000. Father also spent two weekends in Sandy to be with the children.

When mother lived in Grants Pass, she generally cooperated with father in scheduling and coordinating father's parenting time and allowing additional time beyond that required by the original dissolution judgment. When mother decided to remarry, she refused to drive half-way to meet father to deliver the children or to allow parenting time beyond that required by the original dissolution judgment. Father described mother's new husband as "congenial" and stated that their relationship was amicable.

Father testified that starting about two months after the dissolution and lasting for about three months, he was concerned that mother was not providing sufficient supervision for the children after school. The older son told father

that, when he arrived home after school, mother's house was locked and he was supposed to go stay with one of two neighbors, but sometimes neither of them was home. Father discussed the situation with mother, who said she would make sure that there was a specific person available each day, but the child reported to father that "he was still coming home to a locked house." When asked by the court if the childcare situation had been taken care of to father's satisfaction after three months, father responded, "Yes."

Ray Burleigh, a child and family therapist, testified about the custody evaluation he conducted for this proceeding. According to Burleigh, father is the children's "psychological parent."Burleigh described the close relationship between father and the children and the very strong attachment the older child in particular has to his father. Burleigh also testified about the changing needs of the children since the dissolution due to their age and level of development. According to Burleigh, accepted psychological authority encourages increased time with the same-gender parent as children reach age eight to ten. Burleigh also testified that the move from Grants Pass involved the loss of a "system of support" for the children. Burleigh explained that that support system included their grandmother and family friends, as well as the children's attachment to grandmother's farm and animals. As a third change since the dissolution, Burleigh cited lack of after-school supervision. There were multiple caregivers for the after-school period. According to Burleigh, "on two occasions the police were involved" to deal with one or both of the children during after-school hours. The exact nature of police involvement is uncertain from the record. On one occasion, it appears that the younger son was being bullied by an older child and afterward the police were called. Overall, Burleigh stated that, in his opinion, custody should be with father. He explained that he based that opinion on the network of support in Grants Pass, mother's questionable problem-solving ability after the dissolution, and mother's lack of understanding of the need to create a new system of support in Sandy.

At the close of father's case, mother moved to dismiss for insufficient evidence. ORCP 54 B(2).[2] Father's lawyer

---

[2] Mother termed her motion as one for a "directed verdict." As father's lawyer observed to the trial court, there can be no directed verdict in a case tried to the

argued that father had presented a *prima facie* case, and the trial court responded, "[Y]ou're correct that you've made out a *prima facie* case, but do we want to sit here for two or three hours and hear testimony that's not going to make any difference?" The trial court subsequently entered a written order denying father's petition for modification. In part, that order stated: "The Court finds that there has not been an unanticipated substantial change in circumstances since the original Dissolution Judgment sufficient for it to even consider a change of custody." The order then addressed evidence that father had presented and explained why the court determined that none qualified as a substantial change of circumstances.

■■ We understand father to first argue that the trial court could not enter a directed verdict because its oral statement indicated that it had concluded that father had presented a *prima facie* case. However, written orders control over oral judicial statements. *See, e.g., Haynes v. Burke*, 290 Or 75, 94, 619 P2d 632 (1980) (Tanzer, J., specially concurring); *Roe v. Doe*, 161 Or App 477, 483, 984 P2d 344 (1999), *rev den* 329 Or 651 (2000). One reason for that rule is that "a judge may speak casually when discussing the case or giving guidance to the lawyers * * *." *Haynes*, 290 Or at 94. In any event, in this case, in light of the court's entire oral statement, it does not appear that the court's statement should be read to stand for as much as father argues. After stating that father has "technically * * * made out a *prima facie* case," the court continued:

> "The principal thrust of [father's] argument has been that he's spent more time than he was allotted in the divorce decree. It's interesting, as I was listening to this, when I do divorces and there's a custody fight, I often—I'll set the visitation. I say, this is a minimum visitation. I encourage you to give more, because—and I think Mr. Burleigh would agree with me, 50-50 is great, you know, both parents. They ought to know both the natural mother and the natural father. And the law is pretty clear that [neither] this court

court. Mother would have more correctly labeled her motion as one to dismiss for insufficient evidence under ORCP 54 B(2). Because mother clearly apprised the trial court of the issues she intended to raise, however, we consider the motion and resulting ruling as if mother had used the correct label. *Falk v. Amsberry*, 290 Or 839, 844-45, 626 P2d 362 (1981); *Hunter v. Farmers Ins. Co.*, 135 Or App 125, 132 n 1, 898 P2d 201 (1995).

nor any other trial court can stop people from moving out of state. You know, I've known cases where people go clear to Hawaii, go to Alaska. And sure, the father or the mother, whichever one [did not have] custody at the time, is going to have less visits, less time with them.

"And I think the father—Mr. Burleigh has indicated that the boys are moving into the age where they need the masculine influence, but he hasn't said they are there yet, and I think there is masculine influence apparently in the home with the mother. And that's not to mean that he should take over the father's role, because I don't think step-fathers should even attempt to do that. *So I'm satisfied that there has not been a showing of a substantial change in circumstance that would justify the court in taking [custody] away from * * * mother. So I'll grant the motion[.]*"

Viewed in its entirety, the trial court's oral statement is not inconsistent with its written order granting mother's motion. And even if it were, the court's written order granting mother's motion would control.

We understand father to argue alternatively that the trial court erred in concluding that he had not presented sufficient evidence to withstand mother's motion to dismiss. To prevail on a petition for custody modification, the requesting party has the burden to establish that there has been a substantial change in circumstances relating to the capability of one or both parents to care for the children and that a change in custody would be in the best interests of the children. *See, e.g., State ex rel Johnson v. Bail*, 325 Or 392, 397, 938 P2d 209 (1997); *Heuberger and Heuberger*, 155 Or App 310, 313, 963 P2d 153, *rev den* 328 Or 40 (1998). The change-in-circumstances rule "avoid[s] repeated litigation over custody and * * * provide[s] a stable environment for children." *Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990). To qualify as a change of circumstances for custody modification purposes, events must be unanticipated and must have arisen since the last order. *Teel-King and King*, 149 Or App 426, 429-30, 944 P2d 323 (1997). Only if the moving party demonstrates a substantial change of circumstances does a court engage in the second step of the analysis, determining whether modification would be in the best interests of the children. *Heuberger*, 155 Or App at 313.

Very little of father's evidence related to unanticipated changes since the time of the original dissolution judgment. Based on the evidence in the record, there is no question that father is a good and committed parent. However, such evidence is pertinent to establishing a change in circumstances only if it relates to a change in parental capability to care for the children. In this case, there is no evidence that father's parenting capabilities have changed since the time of the original dissolution judgment.

Moreover, father did not establish that mother's capability to care for the children had changed. Mother has remarried and moved since the original dissolution judgment. Such events, however, are not sufficient, in and of themselves, to support a change-in-circumstances determination unless they are shown to have had a significant adverse effect on the custodial parent's ability to care for the children. *Teel-King*, 149 Or App at 430. In this case, father testified that, since the move, the older child has shown changes in behavior and that the younger child would prefer to still live in Grants Pass. There was also evidence that the children miss their extended family in Grants Pass and on their grandmother's farm. Father did not present any evidence, however, establishing that those effects were caused by a change in mother's parenting abilities related to the move or remarriage; they are the sorts of changes that could be experienced by any child who has moved from a long-time home. *See Duckett and Duckett*, 137 Or App 446, 449, 905 P2d 1170 (1995), *rev den* 322 Or 644 (1996) ("If maintaining a close geographic relationship with both parents were *controlling*, no primary parent would be allowed to move away over the objection of the other parent without losing custody of the child.") (emphasis in original). The move has apparently made it more difficult for father to exercise his parenting time. That is regrettable, particularly in view of the important role that father plays in these children's lives. Hopefully, mother will make every effort to assist father in continuing his involvement with the children. However, those sorts of problems commonly occur when a custodial parent moves a significant distance from the noncustodial parent. In the absence of evidence that shows that a move has had a significant adverse effect on the custodial parent's capacity to care

for the children, it does not constitute a substantial change in circumstances for purposes of modifying custody.

Burleigh testified that the children are coming to an age where they would benefit from increased time with the same-gender parent. Normal developmental changes, however, are factors that are not unanticipated changes. In other words, they should be within the contemplation of a court when it makes an initial custody determination and so cannot, in themselves, provide the basis for a change in circumstances. *See Teel-King*, 149 Or App at 430 (child's enrollment in kindergarten not a proper consideration in change-of-circumstances analysis).

Finally, father presented evidence that could support a finding that mother was not providing adequate after-school supervision for children. Assuming that that circumstance was sufficient to rise to the level of a substantial change in circumstances, father himself testified that the problem was short-lived and had been resolved to father's satisfaction more than two years before the modification trial. Accordingly, it would not support a finding that mother was no longer capable of providing adequate care for the children.

For the above reasons, we conclude that the trial court did not err in granting mother's motion to dismiss for insufficient evidence.

Affirmed.