Submitted on record and brief January 4, affirmed February 7, 2007

In the Matter of the Marriage of
Shawn D. GARRETT,
*Co-Petitioner-Appellant,*
*and*

Brandy E. GARRETT,
nka Brandy Rugh,
*Co-Petitioner-Respondent.*
980562

In the Matter of the Marriage of
Shawn D. GARRETT,
*Petitioner-Appellant,*
*and*

Brandy E. GARRETT,
nka Brandy Rugh,
*Respondent-Respondent.*

Linn County Circuit Court
040821; A128433

152 P3d 993

Nancy M. Brady filed the brief for appellant.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Carson, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

In this custody case, father appeals after the trial court modified prior custody judgments and awarded custody of the parties' two children to mother, with parenting time for father according to the 2004 Linn County Parenting Plan, plus one extra weekend every other month. Father makes three assignments of error: He asserts (1) that no substantial change of circumstances occurred justifying a change in custody of the parties' daughter; (2) that it is not in the best interests of both of the parties' children to change custody; and (3) that, in the event we affirm the change in custody, the trial court awarded too little parenting time to him. Mother has not responded in this court to father's appeal. We review *de novo*, ORS 19.415(3), and affirm.

■    At the time of trial, father had sole custody of the daughter pursuant to the parties' stipulated 1998 judgment of dissolution, and the parties had joint custody of their son, pursuant to a 2002 stipulated judgment. Father filed a motion to modify mother's parenting time with the daughter to conform to the "1998 Linn County Parenting Plan," and to grant him sole custody of the son, with parenting time for mother according to the 1998 plan. Mother counterclaimed, asking for sole custody of both children, with parenting time for father according to the Linn County plan.

> "A petitioner seeking a change of custody must show (1) that after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed, and (2) that considering the asserted change of circumstances in the context of all relevant evidence, it would be in the child's best interests to change custody from the legal custodian to the moving party."

*Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990) (footnote omitted).

■    In his first assignment of error, father argues that the trial court erred when it found, under the first step in *Ortiz*, that there was a substantial change of circumstances

in regard to the care of the daughter. Because father had custody of the daughter, mother had the burden of showing a substantial change in circumstances regarding the daughter after the judgment dissolving the parties' marriage in 1998. In finding a change of circumstances, the trial court determined that

> "there have been multiple changes in the actual parenting time arrangements between the parties as well as the primary custody of the youngest child [son] since the decree. * * * There has been a pattern of interference, through active efforts and through passive resistance on father's part, which has adversely affected mother's relationship with her children."

At trial, testimony by the parties showed that, since 1998, both mother and father have moved numerous times: father from Alaska to Lebanon, Oregon, then back and forth between Lebanon and Eugene, and mother from Alaska to Oregon, Florida, Louisiana, and back to Oregon in 1999. Initially, the parties changed physical custody of the children several times (although in the last few years father primarily had physical custody) and were fairly flexible with giving each other parenting time. Beginning in September 2003, however, communication between the parties started to break down, and conflicts arose over parenting schedules, transportation of the children, trade-off times, child support, medical costs, and other issues.

A core issue between the parties became father's anger in responding to those conflicts. The evidence in that regard is in dispute. Father testified that he "[did]n't think [he'd] ever lost his temper[.]" However, wife testified that, during the marriage, father was verbally and physically abusive to her and, after the parties' dissolution, he continued to be verbally abusive when they talked on the phone or exchanged the children. On one occasion, a physical altercation occurred between father, father's mother, mother, and mother's fiancé, resulting in the police being called and a restraining order being entered against father. Mother's fiancé, who is a police officer, testified that father had screamed at and threatened mother on the phone prior to that incident.

Around Christmas 2004, another disagreement arose regarding visitation, which resulted in a police officer from a different agency going to father's house to try to convince father to let the children go to mother's house, according to a prior agreement between the parties. That police officer testified that father was "defiant and angry," that father told the officer that he would have to arrest him, that father stated that he would sue the officer, and that father slammed the door in the officer's face. The children were present during the incident, and the officer testified that the daughter was "old enough to understand what was going on[,] and she was clearly upset." The officer also testified that, on the day of the hearing in this proceeding, father confronted him in the courthouse hallway and "rant[ed]" at him.

The escalation of father's anger after the judgment of dissolution could constitute a substantial change of circumstances that would warrant the change of custody of the children to mother. In *Francois and Francois*, 179 Or App 165, 171, 39 P3d 265 (2002), the father argued that his hostility and interference with the mother's parenting time could not, as a matter of law, constitute a substantial change of circumstances. We rejected that argument, observing that "[a] change of circumstances, by very definition, is a change in 'the capacity of either the moving party or the legal custodian to take care of the child properly.' " *Id.* (quoting *Ortiz*, 310 Or at 649). A component of the capacity of a custodial parent to take care of a child properly is the promotion by the custodial parent of a healthy relationship between the children and the noncustodial parent. Thus, depending on the facts of a particular case, anger, hostility, and interference with a noncustodial parent's parenting time may constitute a substantial change of circumstances for purposes of a change of custody.

In this case, father claims that, on *de novo* review, we should find in accordance with his testimony that he never lost his temper, that he has been the more flexible party, and that mother has been the uncooperative party causing the conflicts between the parties. We note, however, that the trial court found as follows:

"Mother testified in a straight forward manner. She did not tend to qualify her answers. Her demeanor was consistent with a finding of credibility.

"Father testified well except when asked to deny abuse allegations. He then tended to use qualifiers, like that he did not recall saying or doing this or that. His overall demeanor when answering those questions along with the nature of his responses indicate a willingness to minimize abuse allegations against him."

The trial court also found that the police officer who had gone to father's residence to deal with the Christmas schedule

"testified in a manner that appeared disinterested and credible. The court also notes that there is no evidence he knows either party or that he has any reason to be prejudiced in any way."

We agree with the trial court's findings. The hearing was essentially a swearing match between mother and father, and the police officer was the only disinterested witness. Like the trial court, we are inclined to give the officer's testimony more weight for that reason. As to the competing testimony of the parties, the trial court was in the best position to assess the credibility of the parties. The trial court found father's testimony that he does not have a problem with anger to be not credible. For example, the court commented,

"Father argues that police officers do not assist him and are against him. The court notes that police officers who do not know him from entirely different police agencies have experienced his anger and acted upon it. His protestations are not credible."

In light of the above evidence, we are persuaded that the escalation of father's anger in his dealings with mother constitutes a substantial change of circumstances that warrants a determination about whether the best interests of the children require a change of custody of the daughter. As to the son, ORS 107.169(5) provides that the "[i]nability or unwillingness to continue to cooperate [in a joint custody arrangement] shall constitute a change of circumstances sufficient to modify a joint custody award." Consequently, we turn to the issue of the best interests of both children.

■ In his second assignment of error, father argues that the trial court erred when it found that it was in the best interests of the children under ORS 107.137(1) that mother be awarded custody.[1] He asserts that the trial court failed to give proper weight to the fact that he had been the primary caretaker of the children, that he has a strong bond with them, and that over the course of their lives, he has provided a more stable home for the children than mother has.

Our review of the record results in our agreement with the trial court, which found, in part:

"The children have strong ties with both of their parents and with each other. * * * Both parents demonstrate significant interest in and commitment to their children. * * *

---

[1] ORS 107.137 provides:

"(1) In determining custody of a minor child under ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e) The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f) The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. However, the court may not consider such willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in a pattern of behavior of abuse against the parent or a child and that a continuing relationship with the other parent will endanger the health or safety of either parent or the child.

"(2) The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors. However, if a parent has committed abuse, as defined in ORS 107.705, there is a rebuttable presumption that it is not in the best interests and welfare of the child to award sole or joint custody of the child to the parent who committed the abuse.

"(3) In determining custody of a minor child under ORS 107.105 or 107.135, the court shall consider the conduct, marital status, income, social environment or life style of either party only if it is shown that any of these factors are causing or may cause emotional or physical damage to the child.

"(4) No preference in custody shall be given to the mother over the father for the sole reason that she is the mother, nor shall any preference be given to the father over the mother for the sole reason that he is the father."

> Father has been very devoted to his children. He has centered his life around them. He gave up plans that may have been in his interest to move to Texas and made other personal sacrifices for the children. The children have thrived in his care. Their school attendance and general health is excellent. They are doing well academically. [The daughter] has skipped ahead two grades in school. This makes it difficult for the court to consider changing their current situation. However, as noted below, there are reasons to consider just that."

We also agree with the trial court's findings that, although father had been the primary parent during the last couple of years and was very involved with the children, mother was the primary parent during the first part of their lives and continued to be actively involved with them, exercising more than the ordinary amount of parenting time with them, and was primarily responsible for their medical and dental care and for buying their clothing.

Finally, we agree with the trial court's findings that

> "[f]ather has not been particularly willing to facilitate a close relationship between mother and the children. In the past couple years he has in fact obstructed her relationship, failed to cooperate in ways that would have encouraged that relationship and made it difficult for mother to pursue more involvement with the children. Father also engaged in a pattern of misinformation or failure to provide information to mother in an effort to deprive her of contact with the children. He has made her contact with and participation with schools difficult. * * *

> "While the evidence is not substantial as to mother's conduct in this regard, there is no indication that she has significantly tried to keep the children away from father or interfered with his relationship with them.

> "* * * * *

> "Father engaged in abusive conduct against mother. There is no reason to conclude that it is any indication that father is currently a danger to the children, however his abusive conduct, anger and controlling behavior interferes with mother's relationship with the children and the children's relationship with her family.

> "* * * * *

"<u>Both parents are excellent parents. Both love their children. Both devote themselves to their children.</u> The single most distinguishing factor between them is father's inappropriate use of anger and abuse to control and intimidate and his efforts to keep mother uninformed or misinformed about things crucial to the children."

(Underscoring in original.)

In light of all the evidence, this case presents a "close call" and, as the trial court noted, both parents are caring parents. However, like the trial court, we are concerned about how father has chosen to express his anger on multiple occasions, its impact on mother's relationship with the children, and on father's ability to be a positive role model for the children. Children typically learn to "parent" from the example set by their parents. In our view, father's behavior presents a model that is not conducive to the promotion of healthy relationships. We conclude therefore that, based on the above evidence, there is no persuasive reason to disturb the trial court's ruling regarding the custody of the children and that it is in their best interests that mother be awarded custody. *Cf. Meier and Meier,* 286 Or 437, 446, 595 P2d 474 (1979) ("[I]n making the determination of the best interests of the child, the trial judge is in a far better position to weigh the various factors which enter into the problem, and his decision should not lightly be disturbed by a court on appeal.").

■     In his final assignment of error, father asks for more parenting time than was ordered by the trial court. In his motion for modification, and at trial, father requested that mother receive parenting time according to the 1998 Linn County parenting plan. After granting custody to mother, the trial court ordered that father be granted parenting time according to the 2004 Linn County parenting plan, plus one extra weekend every other month. (Father does not explain on appeal how the 1998 and 2004 plans are different.) We are unable to find any place in the record where father objected to the trial court's order or requested some other parenting plan after the court ruled, and father's brief merely recites that he desires custody and "as much time with the children as possible." In order to raise an issue on appeal, an appellant must first raise the same issue in the trial court so that the court can have an opportunity to rule on it. ORAP 5.45. If father

objected to the imposition of the 2004 Linn County parenting plan plus one extra weekend in the trial court, we are unaware of that fact. Because father does not demonstrate that he has adequately preserved the issue of parenting time for purposes of appeal, we decline to review his final assignment of error.

Affirmed.