Argued and submitted November 6, 2007, decision of Court of Appeals reversed; supplemental judgment of circuit court reversed; case remanded to circuit court for further proceedings January 25, 2008

In the Matter of the Marriage of

James H. BOLDT,
*Respondent on Review,*

*and*

Lia BOLDT,
*Petitioner on Review.*

(CC No. 98-2318-D(3); CA A126175; SC S054714)

176 P3d 388

Clayton C. Patrick, Clatskanie, argued the cause for petitioner on review. With him on the briefs was Steven C. Morasch.

James H. Boldt, Lacey, Washington, argued the cause and filed the briefs on his own behalf as respondent on review.

Robert A. Graham, Jr., filed briefs on behalf of *amicus curiae* Doctors Opposing Circumcision.

Michael H. Simon, Perkins Coie LLP, Portland, Michael S. Lazaroff, Mark D. Harris, Sandra J. Badin, and Eben A. Krim, Proskauer Rose LLP, New York, Marc D. Stern, American Jewish Congress, New York, Steven M. Freeman, Anti-Defamation League, New York, and Nathan Diament, Union of Orthodox Jewish Congregations of America, filed a brief on behalf of *amici curiae* American Jewish Congress, American Jewish Committee, Anti-Defamation League, and Union of Orthodox Jewish Congregations of America.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

---

** Linder, J., did not participate in the consideration or decision of this case.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

The parties dissolved their marriage in 1999. Mother was awarded custody of their four-year-old son, M. Since 1999, the parties have battled over M's custody in three separate legal proceedings. When this third proceeding began, father had custody of M, who was then nine years old. In this proceeding, mother again seeks to change M's custody, on the ground that father intends to have M circumcised as part of M's conversion to the Jewish faith. In the alternative, as a condition of father's continued custody, mother seeks an order prohibiting father from having M circumcised. The trial court denied mother's motion to change custody, but enjoined father from having M circumcised pending mother's appeal. Mother appealed the trial court judgment to the Court of Appeals. That court affirmed the judgment without opinion. *Boldt and Boldt*, 210 Or App 368, 150 P3d 1115 (2006).

We allowed mother's petition for review and on *de novo* review we now conclude that the trial court erred in failing to determine whether M desired the circumcision as father contended or opposed the circumcision as mother alleged.[1] Because we view that finding as a necessary predicate to determining whether mother alleged a change in circumstance sufficient to trigger a custody hearing, we reverse the decisions of the Court of Appeals and the trial court and remand the case to the trial court.

In the normal course, religious and medical decisions such as the one in this case, are considered private family matters determined by the parents or between parents and child, without resort to the courts. Unfortunately, however, these parties cannot or will not resolve this matter without court intervention.[2] We therefore turn to the issue

---

[1] In reviewing a decision of the Court of Appeals that is an appeal from a suit in equity, we may review the case *de novo* or may limit our review to questions of law. ORS 19.415(4); *O'Donnell-Lamont and Lamont*, 337 Or 86, 89, 91 P3d 721 (2004), *cert den*, 543 US 1050, 125 S Ct 867, 160 L Ed 2d 770 (2005) (reviewing custody dispute between father and maternal grandparents *de novo*). Because the Court of Appeals did not address the issues that we conclude must be considered, and because we are remanding the case to the trial court for further proceedings, we elect in this case to review the record *de novo*.

[2] The parties' public marital history is an acrimonious one, in which their battle for M's custody has been the centerpiece. The parties married in 1994. M was

raised on review, and take the following pertinent facts from the pleadings and affidavits submitted by the parties below.

Mother is a member of the Russian Orthodox Church and, while the parties were married, they raised M in that faith. About the time of the dissolution, father began studying Judaism. He also began teaching M and his other son, M's half-brother, about Judaism. M learned Hebrew, began attending synagogue with his father, and in February 2004 began taking classes at the synagogue. In early May 2004, father converted to Judaism under the conservative movement coordinated by the United Synagogue of Conservative Judaism. Father told mother a few days later that he had converted. He also told mother about the possibility that M would convert to Judaism and that, to do so, M would have to be circumcised.

On June 1, 2004, mother filed a motion for a temporary restraining order to prevent father from having M circumcised that evening. The trial court held a telephonic hearing on mother's motion that afternoon. Mother testified that, the day before, she had learned from M that father was planning to have M circumcised against M's wishes. She acknowledged that she had known about the possibility of the circumcision for nearly a month, but asserted that she had not known it would happen so soon. She also stated that she had not previously known that M objected to the procedure. Father responded that the court lacked jurisdiction because M had been living with him in Washington for almost two years. He also contended that, as sole custodian of M, he had the authority to make the decision to have M circumcised. Finally, father asserted that (1) M wanted to be circumcised because M wanted to convert to Judaism; (2) M's doctor also had recommended circumcision for medical reasons; and (3) M's doctor would perform the circumcision. Following the telephonic hearing, the trial court entered a temporary

---

born in March 1995. The parties divorced in 1999, and the trial court granted sole and legal custody of M, then four years old, to mother. Father sought custody of M in 2001 and 2002. In 2002 the trial court granted father "sole and legal custody" of M. On the same day, the Court of Appeals affirmed without opinion, both father's appeal of a 2001 judgment and mother's appeal of the 2002 judgment. *Boldt and Boldt (A119754)*, 203 Or App 545, 129 P3d 280 (2005); *Boldt and Boldt (A116684)*, 203 Or App 545, 129 P3d 280 (2005), *rev den*, 340 Or 157 (2006). Both of those appeals were pending when this case was filed in the trial court.

restraining order prohibiting M's circumcision until such time as mother had filed a written motion to change custody and the court had held a hearing to consider the jurisdictional issue.

On June 4, 2004, mother filed two motions. The first was a motion for temporary custody under ORS 107.139,[3] or in the alternative, for an order prohibiting father from having M circumcised. The second was a motion to change custody under ORS 107.135.[4] In support of both motions, mother submitted an affidavit in which she alleged that father intended to have M circumcised against M's wishes. She asserted that she was not concerned that M might convert to Judaism, but was concerned that the conversion required him to be circumcised. She alleged that M had told her the day before the planned circumcision that he did not want to be circumcised. She also asserted that M had said that he was afraid to contradict his father regarding the circumcision. Mother averred that, "I hope that ultimately the court will be able to interview [M] in chambers so that his true feelings about this can be determined." Finally, mother expressed concern that a flawed circumcision could result in permanent injury to M.

---

[3] ORS 107.139 provides, in part:

"(1)(a) Following entry of a judgment, a court may enter ex parte a temporary order providing for the custody of, or parenting time with, a child if:

"(A) A parent of the child is present in court and presents an affidavit alleging that the child is in immediate danger;

"(B) The parent has made a good faith effort to confer with the other party regarding the purpose and time of this court appearance; and

"(C) The court finds by clear and convincing evidence, based on the facts presented in the parent's testimony and affidavit and in the testimony of the other party, if the other party is present, that the child is in immediate danger."

The legislature amended ORS 107.139 and ORS 107.135 in 2007. However, those amendments are not material to the issues presented here. For that reason, we refer to the current versions of the statutes.

[4] ORS 107.135 provides, in part:

"(1) The court may at any time after a judgment of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by ORCP 7 * * *:

"(a) Set aside, alter or modify any portion of the judgment that provides * * * for the custody, parenting time, visitation, support and welfare of the minor children[.]"

In his response to those motions, father argued that the court lacked jurisdiction under ORS 109.744(1)(a),[5] because M had lived with father in Washington State since 2002. Father also argued that the court lacked authority to grant mother's motions because (1) granting the motions would violate father's freedom of religion under the religion clauses of the United States and Oregon constitutions; (2) there had not been a substantial change of circumstances since the October 9, 2002, modification justifying a change in custody; (3) it would not be in M's best interest to change custody; (4) the circumcision was medically advisable independent of the religious reasons for it; and (5) although M's wishes were "legally irrelevant," M wanted to be circumcised. Father's response included affidavits from M's half-brother and father's domestic partner. Each of those affidavits stated that M wanted to be circumcised so that he could convert to Judaism. Father also submitted an affidavit from M's urologist, Dr. Ellen. Ellen stated that he had met with M and discussed the procedure with him, that M understood the procedure and had stated that he wanted the circumcision so that he could convert to Judaism. According to Ellen, M did not appear to be coerced. Ellen also stated that there were medical concerns that were sufficient for recommendation for the procedure. Ellen averred that circumcision is a safe procedure, that there would be some minor discomfort for about three days that would not prevent M from carrying on normal activities, and that M's circumcision would greatly reduce M's risk of penile cancer and certain infections.

After the parties filed briefs, the trial court conducted a telephonic hearing on the jurisdictional issue. At the end of that hearing the trial court concluded that it had jurisdiction over the parties.[6] The court also concluded that the

---

[5] ORS 109.744 provides, in part:

"(1) [A] court of this state that has made a child custody determination consistent with ORS 109.741 or 109.747 has exclusive, continuing jurisdiction over the determination until:

"(a) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships[.]"

[6] On appeal, neither party has challenged the trial court's jurisdictional ruling, and we have no reason to disturb the trial court's decision on that issue.

decision whether a child has elective surgery is reserved to the custodial parent. However, because the parties' previous custody order appeals were still pending in the Court of Appeals, the trial court entered an order prohibiting M's circumcision until those appeals were final. The court stated that it would not hold an evidentiary hearing on the motion for a change of custody because a decision by the Court of Appeals on mother's other custody appeal could result in M's custody reverting to mother, thereby mooting the question. The trial court also concluded that, in any event, mother had not alleged sufficient grounds for an emergency change of custody to mother.

Both parties objected to the form of the judgment, and the trial court held another telephonic hearing on their objections. Following that hearing, the trial court concluded, based on the affidavits submitted by the parties, that the decision to have M circumcised was not a change of circumstances sufficient to trigger an evidentiary hearing. Shortly after the second telephonic hearing, the trial court entered a supplemental judgment reflecting the rulings it had made orally at the two hearings. The court denied mother's motion for temporary custody as well as her motion for an order to show cause why a change of custody should not be granted. In 2006, the trial court corrected the judgment to clarify that it had enjoined the parties from having M circumcised until after any appeals in this case were resolved.

Mother appealed from the supplemental judgment and, as noted, the Court of Appeals affirmed without opinion. We allowed review. On review, mother argues that the trial court erred in not granting her an evidentiary hearing on her motion to change custody so that she could present evidence regarding M's health, welfare, and best interests. She also argues that a custodial parent does not have the absolute right to have elective, nonmedically necessary surgery performed on his or her child without regard to the possible adverse consequences. Finally, she argues that a trial court has the authority to condition an award of custody when it is necessary to protect the best interests of the child.

Father responds that the trial court properly denied mother's motion for a change of custody. He argues that no

evidentiary hearing was required on the motion, because mother failed to satisfy her burden under ORS 107.135 to demonstrate a sufficient change in circumstances. He also argues that mother received a hearing, because there was a telephonic hearing during which she testified. Father argues that the trial court examined the affidavits submitted by both parties and properly found that there was an insufficient basis to go forward with an evidentiary hearing.

██ ██ This court has established a two-step inquiry for determining whether a court should modify a custody arrangement. *See Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990) (formulating the inquiry). A parent seeking a custody change must show that (1) after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed, and (2) considering the asserted change of circumstances in the context of all relevant evidence, it would be in the child's best interests to change custody from the legal custodian to the moving party. *Id. See also Greisamer and Greisamer*, 276 Or 397, 400, 555 P2d 28 (1976) (describing two-step analysis). A parent seeking a change of custody bears the burden of showing a change in circumstances. *See State ex rel Johnson v. Bail*, 325 Or 392, 396, 938 P2d 209 (1997) (so stating).

██ The inquiry into whether there has been a change in circumstances is a factual one that relates to the capability of one or both parents to properly care for the child. *Greisamer*, 276 Or at 400. One way a parent can show a change in circumstances is to show a change that has injuriously affected the child. *Henrickson v. Henrickson*, 225 Or 398, 403, 358 P2d 507 (1961). Another is to show a change in the other parent's ability or inclination to care for the child in the best possible manner. *Id.* at 404. When there is insufficient evidence of a change in circumstances since the last custody determination, a court does not consider the second step of the analysis. *See State ex rel Johnson*, 325 Or at 397 (so stating). Therefore, the question whether mother was entitled to an evidentiary hearing to present evidence regarding M's best interests turns on whether she, as the parent seeking a change of custody, satisfied her initial burden of demonstrating a

change in circumstances relevant to the capacity of father to properly care for M since the 2002 custody determination.

The trial court ruled that decisions regarding elective surgery for a child are reserved to the custodial parent, and denied mother's motion without a hearing on the merits. We agree with the trial court that the authority of the custodial parent to make medical decisions for his or her child, including decisions involving elective procedures and decisions that may involve medical risks, is implicit in both our case law and Oregon statutes. For example, in *Ortiz*, this court observed that, "in the context of divorced persons, 'custody' is the legal relationship between a minor child and the legal custodian, *i.e.*, the person to whom the court has given the *primary* rights and responsibilities to supervise, care for, and educate the child[.]" 310 Or at 649 (emphasis in original). However, a statute, ORS 107.154, provides that an order of sole custody to one parent shall not deprive the noncustodial parent of specific rights, including the right to consult with any person who may provide care or treatment for the child and to inspect and receive the child's medical records, as well as the right to authorize emergency care for the child if the custodial parent is unavailable.[7] Father argues that ORS 107.154 limits a noncustodial parent's rights to only those rights specified in that statute, that is, mother can "consult with" M's doctor, but cannot override father's decisions regarding M's medical care. For that reason, father argues, his decision to have M circumcised cannot be the basis for changing a custody order or holding an evidentiary hearing on the issue.

---

[7] ORS 107.154 provides, in part:

"Unless otherwise ordered by the court, an order of sole custody to one parent shall not deprive the other parent of the following authority:

"* * * * *

"(3)  To consult with any person who may provide care or treatment for the child and to inspect and receive the child's medical, dental and psychological records, to the same extent as the custodial parent may consult with such person and inspect and receive such records;

"(4)  To authorize emergency medical, dental, psychological, psychiatric or other health care for the child if the custodial parent is, for practical purposes, unavailable[.]"

Mother, joined by *amicus curiae* Doctors Opposing Circumcision (DOC), asserts that there is no more important decision to make for a male child than to require that the child undergo permanent modification to his body, and argues that an evidentiary hearing is required to find out whether M objects to the circumcision. She also contends that an evidentiary hearing is required so that she may present evidence regarding the harmful effects and permanent nature of circumcision. Indeed, mother and DOC assert that, because of the significant medical risks associated with circumcision, M should not be circumcised even if he states that he wants to undergo the procedure.

In response, father, joined by *amicus curiae* American Jewish Congress, American Jewish Committee, Anti-Defamation League, and Union of Orthodox Jewish Congregations of America (collectively, AJC), argues that the trial court did not need to hold an evidentiary hearing, because M's attitude about whether he wants the circumcision is not legally significant. Father asserts that a child is not the decision-maker on such questions, any more than an infant who is circumcised. If the legislature had wanted a male child to have a say in whether he is circumcised, he contends, it could have adopted a statute to that effect, as it has done in other statutes such as ORS 109.610 (giving minors the right to consent to treatment for venereal disease without parental consent). Father also contends that the health risks associated with male circumcision are *de minimus*. In any case, father maintains that the affidavits he supplied to the trial court demonstrate that M does want to be circumcised.

Finally, father and AJC argue that father has a constitutionally protected right to circumcise his son. They maintain that American Jews must be free to practice circumcision because it is and has been one of the most fundamental and sacred parts of the Jewish tradition. Father concludes that, if this court requires the trial court to hold an evidentiary hearing, we would usurp the role of the custodial parent and violate the First Amendment to the United States Constitution.

Although the parties and *amici* have presented extensive material regarding circumcision, we do not need to

decide in this case which side has presented a more persuasive argument regarding the medical risks or benefits of male circumcision. We conclude that, although circumcision is an invasive medical procedure that results in permanent physical alteration of a body part and has attendant medical risks, the decision to have a male child circumcised for medical or religious reasons is one that is commonly and historically made by parents in the United States. We also conclude that the decision to circumcise a male child is one that generally falls within a custodial parent's authority, unfettered by a noncustodial parent's concerns or beliefs—medical, religious or otherwise. Were mother's concerns or beliefs regarding circumcision all that were asserted in the affidavits in this case, we would conclude that mother did not carry her initial statutory burden to demonstrate a sufficient change in circumstances demonstrating father's inability to properly care for M.

However, in this case, mother has averred in her affidavit that M objects to the circumcision.[8] In our view, at age 12, M's attitude regarding circumcision, though not conclusive of the custody issue presented here, is a fact necessary to the determination of whether mother has asserted a colorable claim of a change of circumstances sufficient to warrant a hearing concerning whether to change custody. That is so because forcing M at age 12 to undergo the circumcision against his will *could* seriously affect the relationship between M and father, and *could* have a pronounced effect on father's capability to properly care for M. *See Greisamer*, 276 Or at 400 (illustrating proposition). Thus, if mother's assertions are verified the trial court would be entitled to reconsider custody. As to that inquiry, however, we think that no decision should be made without some assessment of M's true state of mind. That conclusion dictates the outcome here.

We remand the case to the trial court with instructions to resolve the factual issue whether M agrees or objects to the circumcision. In order to resolve that question, the trial court may choose to determine M's state of mind utilizing

---

[8] In direct contradiction to mother's sworn assertion, father has asserted that M accepts the circumcision.

means available to it under the relevant provisions of ORS 107.425.[9] If the trial court finds that M agrees to be circumcised, the court shall enter an order denying mother's

---

[9] In this state the legislature has made it clear that, in determining child custody in a variety of settings, a court, when appropriate, may use various methods to determine a child's views or best interests.

ORS 107.425 provides, in part:

"(2) The court, on its own motion or on the motion of a party, may order an independent physical, psychological, psychiatric or mental health examination of a party or the children and may require any party and the children to be interviewed, evaluated and tested by an expert or panel of experts. The court may also authorize the expert or panel of experts to interview other persons and to request other persons to make available to the expert or panel of experts records deemed by the court or the expert or panel of experts to be relevant to the evaluation. The court may order the parties to authorize the disclosure of such records. In the event the parties are unable to stipulate to the selection of an expert or panel of experts to conduct the examination or evaluation, the court shall appoint a qualified expert or panel of experts. The court shall direct one or more of the parties to pay for the examination or evaluation in the absence of an agreement between the parties as to the responsibility for payment but shall not direct that the expenses be charged against funds appropriated for public defense services. If more than one party is directed to pay, the court may determine the amount that each party will pay based on financial ability.

"* * * * *

"(4) The provisions of this section apply when:

"(a) A person files a domestic relations suit, as defined in ORS 107.510;

"(b) A motion to modify an existing judgment in a domestic relations suit is before the court;

"(c) A parent of a child born to an unmarried woman initiates a civil proceeding to determine custody or support under ORS 109.103;

"(d) A person petitions or files a motion for intervention under ORS 109.119;

"(e) A person or the administrator files a petition under ORS 109.125 to establish paternity and paternity is established; or

"(f) A habeas corpus proceeding is before the court.

"(5) Application of the provisions of subsection (1), (2) or (3) of this section to the proceedings under subsection (4) of this section does not prevent initiation, entry or enforcement of an order of support.

"(6) The court, on its own motion or on the motion of a party, may appoint counsel for the children. However, if requested to do so by one or more of the children, the court shall appoint counsel for the child or children. A reasonable fee for an attorney so appointed may be charged against one or more of the parties or as a cost in the proceedings but shall not be charged against funds appropriated for public defense services.

"(7) Prior to the entry of an order, the court on its own motion or on the motion of a party may take testimony from or confer with the child or children

motions. If, however, the trial court finds that M opposes the circumcision, it must then determine whether M's opposition to the circumcision will affect father's ability to properly care for M. And, if necessary, the trial court then can determine whether it is in M's best interests to retain the existing custody arrangement, whether other conditions should be imposed on father's continued custody of M, or change custody from father to mother.

The decision of the Court of Appeals is reversed. The supplemental judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

---

of the marriage and may exclude from the conference the parents and other persons if the court finds that such action would be likely to be in the best interests of the child or children. However, the court shall permit an attorney for each party to attend the conference and question the child, and the conference shall be reported."

The legislature amended ORS 107.425 in 2007. However, those amendments are not material to the issues presented here. For that reason, we refer to the current version of the statute.