SHORR, J.
*772 Father appeals from the trial court's supplemental judgment awarding sole custody of their minor child, T, to mother and modifying parenting time provisions of a 2006 stipulated judgment. Prior to the supplemental judgment, father was T's legal custodian, and a general parenting-time plan provided for equal parenting time. Father first assigns error to the trial court's determination that there had been a substantial change in circumstances justifying a change of custody.[1] We conclude that the record is not legally sufficient to prove a substantial change in circumstances justifying a change of custody.
Neither party has sought de novo review. See ORS 19.415(3)(b) ; ORAP 5.40(8). Accordingly, on review of a change of custody, we are bound by the trial court's findings of fact provided that they are supported by any evidence in the record, and we review legal conclusions for errors of law. Botofan-Miller and Miller , 288 Or. App. 674, 675, 406 P.3d 175 (2017), rev. allowed , 362 Or. 860, 418 P.3d 757 (2018). Under that standard, we review the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's determination, and assess whether the record contains legally sufficient evidence to support the determination that a change in circumstances has occurred. Id . at 675-76, 406 P.3d 175.
We state the facts consistently with the trial court's express and implied findings supported by the record. Between 2006 and 2015, father lived in Hillsboro, Oregon. Father was T's sole legal custodian. Mother and father shared equal parenting time pursuant to parenting-time provisions in the 2006 stipulated judgment. In 2015, mother learned from T that father planned to move to Gaston, Oregon, approximately 15 miles further away from mother.[2] Father did not consult mother about the move and did not
notify mother prior to deciding to move. The move required changing T's school in Hillsboro to a local elementary school in Gaston. Mother expressed concern that the move would prevent her from seeing T as often as was occurring under the parenting-time agreement, and she informed father that she would challenge in court his decision to move with T.
Father moved to Gaston approximately five months later. Mother, in response, initiated litigation to modify the 2006 custody and parenting-time judgment. The trial court ultimately concluded that "Father's move, along with the circumstances surrounding that move, including a lack of notice and communication with Mother, combine with Father's reduced flexibility and support for Mother's relationship with the minor child to result in a substantial change in circumstances for the purpose of modifying legal custody of the minor child." Following that conclusion, the court determined that "it is in the best interests of the minor child that Mother be awarded sole legal custody of the minor child." The court entered a supplemental judgment granting mother custody of T and modifying various parenting-time provisions in the 2006 judgment, although the court preserved a 50-50 division of parenting time.
The Supreme Court has formulated a two-step inquiry for determining whether a court can change custody:
"A parent seeking a custody change must show that (1) after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed, and (2) considering the asserted *773 change of circumstances in the context of all relevant evidence, it would be in the child's best interest to change custody from the legal custodian to the moving party. A parent seeking a change of custody bears the burden of showing a change in circumstances.
"The inquiry into whether there has been a change in circumstances is a factual one that relates to the capability of one or both parents to properly care for the child. One way a parent can show a change in circumstances is to show a change that has injuriously affected the child. Another is to show a change in the other parent's ability or inclination to care for the child in the best possible manner."
Boldt and Boldt , 344 Or. 1, 9, 176 P.3d 388 (2008) (internal citations omitted). Under step one of that test, a custodial parent's move "does not automatically constitute a substantial change of circumstances for purposes of assessing a request for a change in custody." Hamilton-Waller and Waller , 202 Or. App. 498, 507, 123 P.3d 310 (2005). Instead, we must consider whether the record supports the trial court's determination that the move would have a significant adverse effect on either parent's "capacity to care for the child[ ]." Dillard and Dillard , 179 Or. App. 24, 31-32, 39 P.3d 230, rev. den. , 334 Or. 491, 52 P.3d 1056 (2002).
The trial court's findings do not support its conclusion that father's move has had a significant adverse effect on either father's or mother's capacity to care for T. The court relied on a number of factors to reach its decision, but those factors, either taken separately or as a whole, do not warrant a change of custody.
The trial court first reasoned that father's failure to notify mother of his planned move supported its decision to change custody. The record reflects that mother learned of the move from T only after father definitively decided to move. Father confirmed his plans when mother approached him about the move. It is unclear when father planned to inform mother of the move had T not brought it to mother's attention.
As a matter of public policy, it may be preferable for a custodial parent to provide ample notice to a noncustodial parent with parenting time if the former plans to change residence. But, as a matter of law, advance notice is only required if the custodial parent plans to move more than 60 miles further away from the noncustodial parent. See ORS 107.159(1) (judgment granting custody with parenting time must include a provision requiring that "neither parent may move to a residence more than 60 miles further distant from the other parent without giving the other parent reasonable notice of the change of residence"). Father had no legal obligation to inform mother of his planned move. Moreover, father's failure to provide notice sooner than he did does not necessarily reflect adversely on his capacity to care for T and does not, on its own, provide a basis for changing custody.
The trial court also based its decision on the fact that "Father has become less supportive of the minor child's relationship with Mother" as a result of mother's opposition to his move. "Adequate care and supervision by the custodial parent includes the promotion of a healthy relationship between the child and the noncustodial parent." Buxton v. Storm , 236 Or. App. 578, 592, 238 P.3d 30 (2010), rev. den. , 349 Or. 654, 249 P.3d 542 (2011). In addition, "anger, hostility, and interference with a noncustodial parent's parenting time may constitute a substantial change of circumstances for purposes of a change of custody." Garrett and Garrett , 210 Or. App. 669, 673, 152 P.3d 993 (2007). Here, there is evidence that father and mother have had a more contentious relationship, including some disputes over parenting time, since mother learned of father's proposed move and that the current litigation may be exacerbating that tension. But the trial court did not find, and the record does not reflect, that father has behaved aggressively toward mother or deliberately attempted to undermine a healthy relationship between mother and T. Cf. Buxton , 236 Or. App. at 592-93, 238 P.3d 30 (concluding that the "escalated conflict" between the father and the mother constituted a substantial change in circumstances in part because "Child's extreme comments and behavior-including verbal attacks on father and [father's fiancée] and *774 standing over [fiancée] with a baseball bat in the middle of the night-appear to reflect mother's influence"); Garrett , 210 Or. App. at 674, 677, 152 P.3d 993 ("the escalation of father's anger in his dealings with mother constitute[d] a substantial change of circumstances" based on the "impact on mother's relationship with the children, and on father's ability to be a positive role model for the children").
Outside of the effect that father's move would have on mother's parenting time, which we discuss below, there is no evidence that father attempted to substantially undermine mother's parenting time with T. See Heuberger and Heuberger , 155 Or. App. 310, 315, 963 P.2d 153, rev. den. , 328 Or. 40, 977 P.2d 1170 (1998) ("[I]nterference with parenting time must be substantial to justify a change of custody on that basis."). Accordingly, father's change in attitude toward mother and the disputes over parenting time are not legally sufficient to constitute a substantial change in circumstances.
Similarly, while the trial court found that T is more prone to "emotional outbursts" since the move, her change in behavior is the sort "that could be experienced by any child who has moved from a long-time home." See Dillard , 179 Or. App. at 31, 39 P.3d 230. There is no evidence that T's change in behavior was caused by a substantial change in either parent's parenting abilities resulting from the move or, conversely, that the change in behavior has had a significant adverse effect on one or both parents' capacity to care for T.
The trial court also relied on its finding that the move "would substantially impact Mother's parenting time and schedule and would result in a significant reduction in Mother's time with the minor child." But a reduction in a noncustodial parent's practical ability to see or spend time with a child following a move by the custodial parent is not equivalent to a change in either parent's capacity to properly care for the child. Indeed, any move by a custodial parent is likely to have some effect on the noncustodial parent's parenting time. If that were sufficient to warrant a change of custody, courts could change custody any time a custodial parent moved somewhere less convenient for the noncustodial parent. See Duckett and Duckett , 137 Or. App. 446, 449, 905 P.2d 1170 (1995), rev. den. , 322 Or. 644, 912 P.2d 375 (1996) ("If maintaining a close geographic relationship with both parents were controlling , no primary parent would be allowed to move away over the objection of the other parent without losing custody of the child." (Emphasis in original.) ). As noted above, however, a move that does not adversely affect either parent's capacity to properly care for the child does not, without more, constitute a substantial change in circumstances sufficient to warrant a change of custody. See Dillard , 179 Or. App. at 31-32, 39 P.3d 230 (concluding that there was no substantial change in circumstances despite custodial parent moving five hours further away, because move did not affect parents' "capacity to care for children"). Here, father's move to Gaston may make it more difficult to accommodate the prior 50-50 parenting time arrangement as set out in the parenting agreement, but there is no evidence that change has caused or will cause "a significant adverse impact" on either parent's capacity to care for T. See Teel-King and King , 149 Or. App. 426, 429, 944 P.2d 323 (1997),
rev. den. , 327 Or. 82, 961 P.2d 216 (1998) ("It is not sufficient merely to show that something has changed. Father must show that the new conditions relate to events relevant to the capacity of either parent properly to take care of the child." (Emphasis in original.) ).
Not only is there no evidence suggesting that father's move to Gaston has had a significant adverse effect on his or mother's capacity to care for T, the trial court expressly made findings that support the opposite conclusion. The court found, and the record reflects, that "Father and Mother exhibit a strong interest in child's wellbeing." In addition, the court found that both parents "have been significant parental figures in their daughter's life," both are "fit parents," and both have "spent equal time meeting the day to day needs of [T]." There is no evidence that father's move to Gaston has altered the fundamental nature of either parent's relationship with T. Neither parent's capacity to *775 properly care for T has been adversely affected as a result of father's move. See Boldt , 344 Or. at 9, 176 P.3d 388 (concluding that a noncustodial parent can demonstrate a substantial change in circumstances with evidence of a change in the custodial parent's "ability or inclination to care for the child in the best possible manner").
In sum, we conclude that father's move from Hillsboro to Gaston-a distance of approximately 15 miles-even when coupled with some limited decline in cooperation by father following that move does not, as a matter of law, constitute a substantial change in circumstances that justifies changing the custody provision of the underlying 2006 judgment giving father custody of T.[3] The trial court erred when it changed custody from father to mother. Accordingly, we reverse and remand for further proceedings.
Reversed and remanded.

Father also assigns error to the trial court's denial of his motion to dismiss mother's custody modification claim at the close of mother's evidence. Our resolution of father's first assignment of error obviates the need to address his second.

Mother had been aware that father was considering moving to Gaston since at least 2009 but only learned of father's concrete plan to move to Gaston approximately five months before the move.

Because there is insufficient evidence of a change in circumstances that warrants a modification of the underlying custody agreement, the trial court could not properly consider, and we do not review, whether a change of custody would be in T's best interest. See Boldt , 344 Or. at 9, 176 P.3d 388 ("When there is insufficient evidence of a change in circumstances since the last custody determination, a court does not consider [whether it would be in the child's best interest to modify the custody determination].").