***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted August 4, affirmed October 25, 2023

Sara BARRETT,
*Petitioner-Respondent,*

*v.*

Byron MILLSAP,
*Respondent-Appellant.*

Lane County Circuit Court
18DR19520; A176632

Stephen W. Morgan, Judge.

Michael Vergamini filed the briefs for appellant.

Sara Barrett filed the brief *pro se*.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Father appeals from a supplemental judgment that changed sole legal custody of their child from him to mother. On appeal, he raises three assignments of error. In the first, he argues that the trial court erred when it failed to properly assign him the primary caregiver preference under ORS 107.137(1)(e). In the second, he argues that the trial court erred when it found a substantial and unanticipated change in circumstances that detrimentally affected the child. In the third, he argues that the trial court failed to make adequate findings to support the best interest determination that awarded sole custody to mother. As explained below, we affirm.

Father and mother have one child together, C. In 2019, father was awarded sole legal custody of C after a multiday trial. That trial revealed that there was a significant level of conflict between father and mother which affected each of them in parenting C. However, after balancing the factors in ORS 107.137(1), the trial court awarded custody to father because it found that mother's negative actions were "systematic over the course of time" and did more to "undermine[] [C's] relationship with his father far more than anything Father did to undermine [C's] relationship with his Mother."

In 2020, mother filed a motion for a change in custody. Because the parties are familiar with the facts developed at trial, we do not provide a detailed description of them here, and reference only those relevant to our legal analysis, below. At the multi-day trial, mother presented evidence that since being awarded custody, father had escalated the conflict between them to such a heightened degree that it was negatively affecting C's mental health and compromising father's ability to parent C. The trial court issued a detailed and lengthy oral ruling in which it laid out the facts and the law relevant to its determinations that father's actions had created a material and unanticipated change in circumstances and that it was in C's best interest to award mother sole legal custody. This appeal followed.

In his first assignment of error, father argues that the trial court erred when it failed to identify him as the

child's primary caregiver, and, relatedly, failed to give father the statutory preference in its custody determination. We conclude that even if the trial court committed legal error, any error was harmless.

"[O]n review of a change of custody, we are bound by the trial court's findings of fact provided that they are supported by any evidence in the record, and we review legal conclusions for errors of law." *Slaughter and Harris*, 292 Or App 687, 688, 425 P3d 770 (2018).

Father points to the portion of the record in which the trial court stated:

> "Preference for primary caregiver of the child if the caregiver is deemed fit by the Court. The Court is not saying that either parent is unfit. In fact, Father is currently the primary caregiver under the current judgment. Prior to that judgment, Mother was the primary caregiver—prior to the previous judgment. Mother has not stopped being active in the child's life post-judgment and in fact, has continued to pursue ways to be involved in C[]'s school and healthcare and general living despite efforts by the father to exclude her.

> "So, therefore, the preference to Father as the caregiver really falls neutral in this factor because I think both parents have made efforts to be a caregiver, and in fact, Father's efforts to exclude Mother have kind of overtaken his parenting to some degree."

We agree with father that the trial court was required to designate one parent as the primary caregiver and to give that statutory preference due consideration. *See* ORS 107.137(1)(e) (providing that a trial court shall consider, among other factors, a "preference for the primary caregiver of the child, if the caregiver is deemed fit by the court"). Although the trial court identified father as the primary caregiver and recognized that father should be given a preference as the primary caregiver, it also stated that the preference "falls neutral in this factor" because of mother's efforts to be a caregiver and father's actions to exclude mother from caregiving.

On this record, it is not entirely clear what the court meant by "falls neutral in this factor." On one hand, that

statement could have meant that the court found that the statutory preference was outweighed by other factors. On the other hand, it could have meant that the court found that the preference itself was neutral. While the former would be permissible, the latter would be error. A preference for one party over another, by definition, cannot be neutral. *See Webster's Third New Int'l Dictionary* 1787 (unabridged ed 2002) (defining "preference" as a "choice or estimation above another" and "higher valuation or desirability"); *see also Henretty v. Lewis*, 319 Or App 345, 348, 509 P3d 701 (2022) ("Not designating a primary caregiver—*or designating both parents as the primary caregiver, which has the same effect*—is inconsistent with the statutory preference created by the legislature." (Emphasis added.)). However, even if the court committed legal error by improperly characterizing the statutory preference as neutral, any such error was harmless on this record.

Under ORS 19.415(2), an appellate court must affirm a judgment unless the error "substantially affect[s] the rights of a party." Here, we conclude that any failure to properly award the statutory primary caregiver preference to father did not substantially affect his rights. Given the entirety of the evidence and the trial court's supported findings of fact, the record demonstrates that the trial court would not have awarded father custody even with the statutory primary caregiver preference in his favor. *Cf. Kirkpatrick and Kirkpatrick*, 248 Or App 539, 553-54, 273 P3d 361 (2012) (declining to correct any error because it was clear from the record that the trial court would have still awarded custody to the father even if it had properly applied the primary caregiver preference to the mother).

The trial court addressed each of the six factors in ORS 107.137(1) to determine what was in C's best interest. In so doing, the court found that ORS 107.137(1)(b), (c) and (f) weighed in mother's favor and that the other factors were neutral or did not apply. The trial court's reasoning on those three factors demonstrates that any error was harmless.

Under ORS 107.137(1)(b), which evaluates the "interest of the parties in and attitude toward the child," the trial court found that father's actions demonstrated that father had allowed his distrust of mother and his desire to exclude

mother from C's life to compromise his ability to parent C. The trial court referenced its prior findings, which included that there was no basis for father's mistrust of mother, and that even though mother "still has work to do," "the evidence in this hearing has been that Mother has learned from past mistakes *** and has *** taken steps to improve upon that situation." The court also found that father had initiated a false DHS report about mother, needlessly caused law enforcement to respond to a wake of C's uncle when C was in attendance, blocked mother from medical information, unilaterally decided to homeschool C, and, thereafter, blocked mother from access to school information. The court stated that father was "willing[] to put his perception of the adult relationship over the quality of life of [C]." Although the court did not explicitly mention it in this ruling, the record contains evidence that father's actions had a significantly detrimental effect on C's mental health.

Moreover, the court found that ORS 107.137(1)(c), "[t]he desirability of continuing an existing relationship," weighed in mother's favor. Even though the court acknowledged that both parents "suffer to some degree in this category," it determined that the factor favored mother because of "father's extreme actions."

The court also found that ORS 107.137(1)(f) weighed in favor of mother. That factor assesses "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." As the trial court recognized, father's unwillingness and inability to facilitate and encourage a relationship between mother and C, indeed—his active efforts to the contrary—were the reasons the court found that there was a material and unanticipated change in circumstances. As the court stated:

> "Father has created such a high level of conflict and such a high conflict environment and also a hostile environment for which the child now has to navigate.
>
> "* * * * *
>
> "The Court finds that it has been that Father has just gotten carried away with a mindset of distrust of Mother to the point that it has become the sole focus of Father, an

excuse Father has used to exclude Mother, rather than parenting in the best interest of the child.

"The Court finds that the frequency and severity of Father's actions to exclude and control Mother's ability to engage in parenting could not have been predicted and created—and has created an untenable situation where it is difficult to see a path forward for both parents with him as the custodial parent."

The trial court also reiterated that mother had made "a stronger effort *** to bridge [the] gap" between mother and father in respect to co-parenting C.

Having found that father's distrust of mother and his desire to exclude mother from C's life compromised his ability to parent C and that father created a "high conflict" and "hostile environment" for C to navigate, the trial court was highly unlikely to allow father to continue to have sole custody, even with a statutory primary caregiver preference. Any error thus did not substantially affect father's rights and was harmless.

In his second assignment of error, father argues that the trial court erred when it found a substantial and unanticipated change in circumstances that detrimentally affected the child. We disagree. "[W]hether a particular set of facts is sufficient to establish a change of circumstances is a question of law" which is "reviewed for legal error." *Johnson and Johnson*, 309 Or App 682, 691, 483 P3d 1174, *rev den*, 368 Or 513 (2021). As to the trial court's underlying factual findings, we are "bound by the trial court's express and implied factual findings, if there is evidence in the record to support them." *Id*. at 688. Here, the trial court's factual findings are supported by evidence in the record, so we do not reweigh the evidence on appeal. With those findings, we conclude that the trial court did not commit legal error when it concluded that there was a substantial and unanticipated change in circumstances that detrimentally affected C.

In his third assignment of error, father argues that the trial court failed to make adequate findings to support the best interest determination that awarded sole custody to mother. We disagree. We review a trial court's best interest

determination for abuse of discretion. *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012). Under that standard, "we must uphold the trial court's decision unless it exercises its discretion in a manner that is unjustified by, and clearly against, reason and evidence." *Stancliff and Stancliff*, 320 Or App 369, 371, 513 P3d 20 (2022) (internal quotation marks omitted). Here, the trial court's oral ruling, which identified specific evidence in the record and how it related to the statutory factors, was legally sufficient to support its ruling.

Affirmed.