Argued and submitted December 2, 2020, reversed and remanded
January 13, 2021

Aaron Scott DAVISON,
*Petitioner-Respondent,*
*and*

Shannon Renae SCHAFER,
*Respondent-Appellant.*

Washington County Circuit Court
C141979DRA; A172998

479 P3d 1108

In this second appeal of a domestic relations action, mother challenges an order significantly increasing father's parenting time and decreasing the amount of child support that mother receives. Mother argues that the trial court erred in structuring the parenting-time plan such that father, the noncustodial parent, was granted more parenting time than mother during daughter's nonschool waking hours. Mother also contends that the trial court erred in calculating the child support award based on mother's potential income, without considering that mother is a full-time student and provides after-school care to daughter. Father did not appear on appeal. *Held*: The trial court abused its discretion when it improperly considered mother's decision to move several years prior to this action as evidence of mother's unwillingness to facilitate daughter's relationship with father. Additionally, the trial court erred in determining mother's potential income without considering that she is a full-time student and provides after-school care to daughter.

Reversed and remanded.

Ramón A. Pagán, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Mother appeals an order granting father, the non-custodial parent, the majority of parenting time during the nonschool waking hours of their seven-year-old daughter and decreasing the amount of child support that mother receives. Father does not appear on appeal. We reverse and remand.

This is the second time that this case is before us. Mother and father separated in 2013, and mother was subsequently awarded sole custody of their then-infant daughter. Although the couple lived in Beaverton prior to their separation, both parents have moved: mother and daughter to Hood River and father to West Linn.[1] In the first proceeding before us, father sought a court order requiring mother and daughter to move closer to him. The trial court ordered mother and daughter to move from Hood River, where they have lived since daughter was a toddler, to within a 10-mile radius of father. Mother did not immediately move, instead appealing the order, and father initiated this proceeding by moving the trial court to award sole custody to father. Father contended that mother had refused to move near him in "direct violation of the court" and that mother had "unreasonably withheld parenting time from [f]ather." Before father filed that petition, however, the Appellate Commissioner stayed the trial court order that required mother to move closer to father.[2]

We reversed the trial court's order requiring mother's relocation, observing that ORS 107.159(1) requires a parent to notify the other parent and the court of a move only if it exceeds 60 miles.[3] *Davison and Schafer*, 306 Or App 555, 557, 475 P3d 125 (2020). Because "the legislature intended for parents to have the latitude to make moves of 60 miles or less, unrestricted by even a notice requirement," we

---

[1] Mother had previously sought to transfer this case to Hood River County, a motion that was denied although no party to the case still resides in Washington County.

[2] Mother's appeal was timely, and the order was stayed before the deadline the trial court had set for mother to relocate.

[3] Mother moved approximately 70 miles to Hood River in 2015; she acknowledged that she failed to provide notice to father of the move. *Davison and Schafer*, 306 Or App 555, 556, 475 P3d 125 (2020).

reasoned that the trial court lacked the authority to order mother to orbit father within a 10-mile radius. We further acknowledged that, although mother's move violated the terms of the then-existing parenting plan, "neither father nor the court sought to remedy it at the time" and that the court had entered a number of subsequent orders over the years recognizing Hood River as the primary residence of mother and daughter. *Id*. at 556.

The hearing on father's motion, which was held before our opinion issued, did not go well for mother. At the outset of the hearing, the trial court recognized that, because its order requiring mother to move had been stayed, it could not use mother's refusal to move as a basis to change custody. Nevertheless, the court observed:

> "*** [W]e got here because you just unilaterally moved, when there was a judgment that didn't contemplate you moving 60 or 120 or 180 miles away, and completely shutting off the other parent.

> "So those dynamics still exist here even if you have a stay on that order.

> "So the question I have today is: Okay, what's actually been happening, how's the parenting time going, and what modifications can I make to the parenting time with you living there at least for the time being so that—it's going to have to be something like that, [father] just gets every weekend, he gets the full winter break, gets, you know, the holidays, all of spring break, pretty much as soon as summer starts, the child moves over to [father] ***[.]

> "*****

> "*** [Y]our case is literally just ignoring court orders. And full of evidence of you telling other people that you intend to ignore court orders. Literally. It's like everywhere, you're unusually defiant to court orders.

> "You just left and went 180[4] miles away to another town, you went to another town, to another town.

---

[4] The trial court's reference to "180 miles" was based on its apparent belief that mother relocated to Bend, but the court later acknowledged that the move was to Hood River.

"And then when you were ordered to move again, you not only didn't do it, you then took the child to counseling and told the counselor in front of the child that you had no intent of doing it, and that you would suffer the consequences."

The trial court's final ruling was consistent with its view at the outset of the hearing, with one exception. As relevant to its question as to how parenting time had been going, the court observed that mother had "actually generally been abiding by the parenting time that does exist." Nevertheless, the court ordered a parenting-time schedule that granted father drastically more parenting time during daughter's nonschool waking hours than mother, including every single weekend during the school year, two-thirds of every summer, and every spring break. The order also required mother to obtain father's approval prior to signing daughter up for activities (although no corresponding requirement was imposed on father). The court explained its rationale as follows:

"The reality is, is it seems to me, this seems to be a clear case of mother lives in Hood River because it's best for her. It's best for her. I guess she sounds like she's escaping dad, generally speaking, but there's nothing in this that's best for [daughter].

"Yes, of course, a child gets used to a school, that doesn't mean it's the best school for them, they're just used to it. Yes, they make friends, that means that the child is sociable, that doesn't mean it's the best place for them or the best friends for them. * * *

"* * * * *

"* * * This seems to me to be a case where if the parents were close to each other, [daughter] would have pretty much 50/50 parenting time with both parents, there would be almost no barrier to that. And that's kind of the crux here is that the parenting time that mother has created is the barrier. Because of her insistence on living in a place that she's comfortable, that she feels is some sort of hideaway corner of Oregon, away from a person that she doesn't like anymore, whatever justification she wants to give herself, I just don't find your argument about it being * * * the best place for [daughter] convincing in any sense of the word.

"* * * * *

"* * * [Daughter] is happy where she is, but she loves dad, so for me really the trick here is how do I get more parenting time with dad.

"And really at this point I think, the way that I look at mom is, you really don't care about dad's parenting time situation, you will deal with what's—I guess—what's given to you to the extent that you don't have to leave where you are. But you don't seem like you're really going to do anything for him.

"So on the flipside, at this point, I'm not really too concerned about preserving as much parenting time for mom as possible, because it's really just all at the expense of dad so that you can have this idyllic life in Hood River for yourself, but not for your kids."

The court also decreased the amount of child support father paid to mother because mother was not working full time. The court memorialized the key part of its oral findings in a judgment as follows:

"The Court finds Mother not credible. The Court finds that Mother has prioritized her comfort over parenting time with Father and cannot articulate why living so far from Father is in minor child's best interest. The Court finds that Mother's living situation is such that Father is denied substantial parenting time, and Mother offers no appropriate remedy for the problem."

Mother requests that we exercise our discretion to review *de novo*, a standard reserved only for "exceptional cases." *See* ORS 19.415(3)(b) (granting us "sole discretion" over whether to allow *de novo* review in equitable proceedings); ORAP 5.40(8)(c) (limiting *de novo* review to "exceptional cases"). This case comes close to presenting the exceptional circumstances warranting *de novo* review. As we will discuss in more detail, the trial court entered a parenting-time allocation that was not requested by either party and focused on increasing father's parenting time instead of applying the appropriate statutory factors to determine the best interests of daughter. And, as previously discussed, this is not the first time this case has been before us, raising a meritorious appellate issue requiring reversal. In argument

before us, mother reasonably questioned the wisdom of sending this matter back a third time to the trial court, rather than exercising *de novo* review and providing finality in the best interests of the child. *See, e.g.*, *Benson and Benson*, 288 Or App 619, 622, 406 P3d 148 (2017) (exercising discretion to review case *de novo* based on similar concerns).

Ultimately, however, we decline to engage in *de novo* review at this time because the record here limits our ability to craft an appropriate remedy. Although the trial court altered the parenting time, that was never the intention of the hearing. The parties thus focused their presentation of evidence on the question of whether custody should be awarded to father, leaving this record bare for us to confidently put in place a remedy. In addition, the trial court did not have the benefit of our prior decision at the time of the hearing.

Absent *de novo* review, we review a trial court's decision relating to parenting time first for legal error to determine "whether the trial court applied the correct legal standard in making the challenged 'best interests' determination." *Finney-Chokey and Chokey*, 280 Or App 347, 360, 381 P3d 1015 (2016), *rev den*, 361 Or 100 (2017). We review the court's best-interests determination itself for an abuse of discretion, and "we will reverse only if the trial court's discretionary determination was not a legally permissible one." *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012).

A court determines parenting time by evaluating what is in the best interests of the child while ensuring that the noncustodial parent has sufficient access to the child to provide for quality parenting time. *Bell and Johnson*, 121 Or App 125, 128-29, 854 P2d 479 (1993). Thus, the question before the trial court is as follows: What is in the best interests of daughter? *See* ORS 107.105(1)(b). The best-interests analysis, in turn, requires the trial court to consider the statutory factors in ORS 107.137(1). *See Sjomeling*, 251 Or App at 188 (applying factors). The statutory factors are as follows:

"(a)    The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. * * *"

ORS 107.137(1). The court must consider all of the relevant factors, bearing in mind that "none of [them], alone, is dispositive." *Sjomeling*, 251 Or App at 188. The court's determination "is also informed by 'the legislative directive to, in reviewing a parenting plan, "recognize the value of close contact with both parents and encourage, when practicable, joint responsibility for the welfare of [the] children and extensive contact between the minor children * * * and the parties. ORS 107.105(1)(b)."'" *Id.* at 189 (quoting *Maurer and Maurer*, 245 Or App 614, 628, 262 P3d 1175 (2011) (brackets in original; omission in *Sjomeling*)).

The trial court's findings appear to relate largely to the final factor—specifically whether mother demonstrated a willingness to facilitate daughter's relationship with father. The court determined that mother did not demonstrate such a willingness, primarily because it concluded that mother's move to Hood River served as a "barrier" to father's parenting time. However, given the factual finding that mother has "generally been abiding by the parenting time that does exist," that conclusion is not legally permissible.

On the facts of this case, mother's decision to move to Hood River is not a proper consideration in the best-interests analysis. Parents sometimes relocate. Although mother should have provided notice of the move at the time it occurred, a move is not itself inherently problematic. *See, e.g.*, *Finney-Chokey*, 280 Or App at 363-64 (benefits to child of move to United Kingdom outweighed damage to relationship with father); *Kness and Kness*, 281 Or App 577, 581, 383 P3d 971 (2016) (mother's role as primary caregiver and child's close relationship with stepfather weighed in favor of

a move to Medford from Klamath Falls, where father lived, because stepfather relocated to Medford).

A court may consider lifestyle choices, including moves, in the best-interests analysis "*only* if [those choices] will or may cause *damage* to the child." *Miller and Miller*, 269 Or App 436, 443, 345 P3d 472 (2015) (emphasis in original). That "a parent's lifestyle choices make coparenting with the noncustodial parent more difficult" is not relevant to the determination of "damage" to a child. *Id*. at 444. Specifically, the logistical difficulty resulting from a move "is a circumstance that is true for every noncustodial parent where the father and mother do not live in close proximity, and it is not a circumstance, in and of itself, that bears on whether the custodial parent is willing and able to foster a positive relationship with the noncustodial parent." *Id*. at 446 (rejecting a trial court's consideration of mother's move 15 miles away from father as part of the best-interests analysis); *cf. Murray and Murray*, 287 Or App 809, 819, 403 P3d 473 (2017) (distinguishing *Miller* because "the trial court was careful not to fault either parent for the parent's *** place of residence").

The trial court concluded in its written findings that mother "prioritized her comfort over parenting time with [f]ather" by moving to Hood River and that mother's "living situation is such that [f]ather is denied substantial parenting time." However, the record here provides no indication that mother's move to Hood River caused "damage" to daughter. To the contrary, the trial court recognized that daughter is "happy" in Hood River, where she has lived since she was a baby. That finding is well supported by the record; by all accounts, daughter is thriving in her school, with her friends, and with the proximity to her siblings and extended family, many of whom reside in Hood River.

Beyond that, on the particular facts of this case, the issue of mother's move was a stale one. As we noted earlier, mother's move to Hood River occurred five years ago, and a number of court orders since that time were predicated on the fact that mother and daughter reside in Hood River. It appears that, at the time of the hearing below, the court and father largely viewed the relevant question to be what would be in father's interests under the circumstances, including

his own choice to live in West Linn, rather than what best would serve daughter in view of how her life has evolved in the five years that she has lived in Hood River.

The record reflects that daughter is happy in Hood River and loves and wants to spend time with both parents. Neither a lopsided parenting arrangement nor daughter's constant travel from her home in Hood River to West Linn appears to be in the best interests of daughter.[5] The impact of such travel alone would seem to militate against sending daughter to father's every single weekend. *See, e.g.*, *Doty and Doty*, 101 Or App 320, 325, 790 P2d 1167 (1990) (recognizing the adverse effects of too frequent movements between the parents' homes). Moreover, many of the benefits of daughter's residing in Hood River—including her proximity to siblings and extended family—would weigh in favor of ensuring that she spends substantial time in the city where she lives. *See Sjomeling*, 251 Or App at 179, 192 (recognizing that proximity to extended family weighs in favor of child's best interests and approving mother's out-of-state move); *Maurer*, 245 Or App at 635-36 (same). Additionally, the record supplies no justification for concluding that it is in daughter's best interests to award mother, the custodial parent, fewer hours of parenting time during daughter's nonschool waking hours or to require mother to seek father's permission to enroll daughter in extracurricular activities.[6] Accordingly, we reverse and remand for a parenting-time allocation that removes the consideration of mother's move to Hood River from the analysis.[7]

---

[5] It appears from the record that daughter travels approximately 70 miles between homes, although the parties frequently meet in Troutdale, which is 23 miles from father's home and 47 miles from mother's home.

[6] The trial court may have relied on the fact that daughter's counseling records contain entries where mother discussed the ongoing custody battle, possibly in the daughter's presence (despite mother's uncontroverted testimony that those conversations were generally held outside of daughter's presence). It appears that the trial court believed that mother's discussion of the litigation in front of daughter was not in daughter's best interests, although it is not clear how those discussions justified awarding father more parenting time. Indeed, the record includes several instances where father's actions are not immune from criticism on that basis.

[7] We observe that the stipulated parenting time agreement that the parties entered while the matter was pending on appeal properly reflects a parenting-time split supported by this record.

In mother's second assignment of error, she challenges the trial court's reduction of child support in the judgment. The trial court found that mother "c[ould] work 40 hours a week but chooses not to." Accordingly, the court calculated support based on a *potential* income of $2,600 per month. However, according to mother's uncontroverted testimony, she is a full-time student and also provides after-school care to daughter. The trial court erred in determining mother's potential income without considering those facts. *See, e.g.*, *Bouris and Bouris*, 276 Or App 637, 639, 369 P3d 1186 (2016) ("In light of wife's full-time status as a student, we conclude that the court's imputation of full-time income is not supported by the evidence in the record.").

The trial court's modifications to the parenting-time schedule and reduction in child support are legally impermissible on this record. Because the trial court abused its discretion in ordering them, we reverse and remand for further proceedings.

Reversed and remanded.