Submitted January 12, reversed and remanded June 15, 2022

In the Matter of the Marriage of

Jarod STANCLIFF,
*Petitioner-Appellant,*
*and*

Heather STANCLIFF,
*Respondent-Respondent.*

Marion County Circuit Court
19DR04704; A174558

513 P3d 20

In this domestic relations case, father was awarded sole legal custody. On appeal, he contends that the trial court abused its discretion in denying his request to relocate with the children to Illinois. Mother did not file an appearance. *Held*: The Court of Appeals concluded that the trial court failed to properly consider all the factors under ORS 107.137(1) in making its determination whether or not relocation was in the children's best interest. Specifically, the trial court's finding that there was no financial benefit if father relocated to Illinois was unsupported by the evidence in the record; also, the trial court impermissibly focused primarily on the geographic proximity of the parents to the exclusion of other factors under ORS 107.137(1). The court reversed and remanded for the trial court to reconsider father's proposed relocation parenting plan in consideration of all of the factors under ORS 107.137(1), and to determine what parenting plan serves the children's best interests.

Reversed and remanded.

Sean E. Armstrong, Judge.

Mark T. McLeod and McLeod & McLeod Attorneys at Law filed the brief for appellant.

No appearance for respondent.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

In this domestic relations case, the court entered a general judgment of dissolution and parenting time awarding father sole legal custody. On appeal from that judgment, father contends that the trial court abused its discretion in denying his request to relocate to Illinois and rejecting a parenting plan that was based on father relocating. Mother has not filed an appearance on appeal. For the reasons that follow, we conclude that the trial court erred in denying father's request to relocate, and we remand for the trial court to reconsider that issue.

## I.   STANDARD OF REVIEW

Father requests that we exercise our discretion to review this case *de novo*. ORAP 5.40(8). Father argues that *de novo* review is warranted because the trial court's findings do not comport with the uncontroverted evidence about how the children are better served by a move to Illinois or how the move would promote the children's long-term stability and needed family support. *Morgan and Morgan*, 269 Or App 156, 159, 344 P3d 81 (2015) ("[A] lower court's reliance on a crucial finding that 'does not comport with the evidence in the record' can be a reason to exercise our discretion to review *de novo*."). Father argues that our exercise of *de novo* review is important to the ruling of the trial court because a proper weighing of the evidence justifies reversing or modifying the trial court's ruling.

We decline to exercise our discretion to review the court's factual findings *de novo*. Instead, we defer to the court's implicit and explicit factual findings if they are supported by evidence in the record. (However, as discussed later, we agree with father that some of the court's factual findings were not supported by evidence in the record.)

In denying father's request to relocate to Illinois, the court was required to consider only the "best interests of the child" standard and the factors under ORS 107.137(1), as directed by our case law. *Cooksey and Cooksey*, 203 Or App 157, 165-66, 125 P3d 57 (2005). Father argues both that the trial court erred in its application of that legal standard by not taking into account certain required factors in

denying the request for relocation and that, even if the court correctly applied the standard, it abused its discretion in determining that relocation did not serve the children's best interest. Those challenges implicate different standards of review.

First, whether the trial court applied the correct legal standard in making the challenged "best interests" determination presents a question of law that we review for legal error. Second, if we determine that the trial court applied the correct legal standard, we review the court's "best interests" determination for abuse of discretion. *Sjomeling v. Lasser*, 251 Or App 172, 187-88, 285 P3d 1116, *rev den*, 353 Or 103 (2012). Under that standard, we must uphold the trial court's decision unless it exercises its discretion "in a manner that is unjustified by, and clearly against, reason and evidence." *Forsi v. Hildahl*, 194 Or App 648, 652, 96 P3d 852 (2004), *rev den*, 338 Or 124 (2005).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

We focus on the evidence and arguments related to the issue of relocation and the trial court's findings that led to its conclusion to deny father's request to relocate to Illinois. Much of the evidence was undisputed; however, to the extent there were conflicts in the parties' versions of the facts, we recite the facts consistently with the court's ruling or otherwise note the factual dispute.

Father and mother met online through several mutual friends in 2010. At that time, father was living with his parents in Illinois, and mother was living in Oregon. The following summer, father helped mother move to Illinois, found her a job, and got her set up with an apartment. After that, they began a relationship and eventually married in 2012.

In September 2013, the parents moved from Illinois to Corvallis, Oregon, with the expectation that father's transfer would open up an opportunity within his new company within six months of the transfer. That opportunity did not materialize, and the parents' financial troubles required them to move in with mother's parents, who lived in Pendleton. During that time, the parents' first minor child,

K, was born in July 2014. Parents agreed that mother would be a stay-at-home mom. There is no dispute that mother was very attentive and caring to K in his infancy, and father had no concerns regarding her parenting.

In 2015, seeking better job opportunities, the family moved to Albany, Oregon, where father began working for a sporting goods company. In September 2016, the parents' second child, V, was born. Then, in September 2017, father was offered a promotion, but it required the family to move to Klamath Falls. Initially, father was going to turn down the offer because he was concerned about moving mother away from her family who lived nearby. Ultimately, the parents agreed that the increase in financial support was in the families' best interest despite knowing it would be a more stressful job for father.

After moving to Klamath Falls, mother's mental and physical health declined, and the parents were struggling in their marriage. Father took three months of medical leave to focus on saving the marriage and assumed more parenting responsibilities while mother was struggling with her health. In July 2018, a week before father's medical leave expired, mother decided to move out and sought counseling and therapy services while living with her parents. Father later learned that, before moving out, mother had attempted to kill herself by driving recklessly. The children were not in the car at the time, but father believed that mother's behavior might nevertheless present a risk of harm to the children.

In March 2019, father filed a simultaneous petition for dissolution of marriage and a motion for emergency custody based upon an immediate danger to the children. By this time, the children had been residing with father full time since July 2018. During a hearing on March 19, father expressed concerns that mother presented a danger to the children based upon multiple attempts to take her own life and negligent acts presenting a risk to the children when they were in her care. Mother appeared *pro se* and admitted to a recent suicide attempt by overdosing on pills but stated that she was nowhere near the children when it happened. The trial court granted the immediate danger request

and awarded no parenting time to mother until further order.

After mother retained counsel, father and mother agreed in April 2019 to the court's entry of a stipulated temporary parenting order that required mother's parenting time to be supervised by father or by an adult in mother's family. Mother was given a minimum of four days of parenting time per week including from 8:00 a.m. to 7:00 p.m. on Saturdays and Sundays and then Tuesdays and Thursdays after father returned from work. Mother saw the children regularly.

In September 2019, father and the children moved to their own home in Stayton and, around the same time, mother moved 20 miles away to Mill City, where she found a job at a convenience store. In October 2019, mother was in a car accident and her license was suspended because she was driving without insurance. Thereafter, mother's parenting time dropped significantly, partially due to her inability to drive and her own family's decreasing willingness to provide supervision and transportation related to her parenting time. When mother was not able to get supervision, father refused to bring the children to her mother's house, five minutes from father's home, even when mother offered gas money to father.[1] According to the parenting plan, mother's parenting time could take place in father's home, but mother stated that she did not want to have parenting time with father supervising because she felt uncomfortable.

The custody trial was held in February 2020. The issues at the hearing were custody, parenting time, and child support, and one of the key questions was whether father should be allowed to relocate to Illinois if he were to be granted custody. In requesting to relocate, father argued that he was from Illinois and reliant on his extended family in Illinois for his and the children's living expenses. Between his parents and his brother, he received $775 a month in assistance. At the time of trial, father and the children were in an unstable economic situation. It was undisputed

---

[1] As described later, the trial court explicitly found mother credible regarding her struggles to obtain parenting time. 320 Or App at 376. We defer to that finding.

that mother's family had pulled back from providing childcare—from five days to three—and then finally removed all support. And, father testified, in the four months preceding trial, mother had had only exercised seven percent of her parenting time—an estimated 32 hours out of 445 hours available according to the temporary stipulated parenting plan entered in April 2019.

Father testified that, if he were to move back to Illinois, his parents were willing to offer rent that would be half the cost of his current rental and he would be able to halve his utilities costs. He also pointed to evidence that his mother, brother, and sister-in-law all worked part-time and were willing to help with childcare, possibly eliminating his childcare costs. Further, father's parents were willing to direct the $400 per month that they were sending to father toward tuition for K for a private school affiliated with the church where father's parents worked.

Father explained that he wanted to move because he could rely on his family support overall—financially and otherwise—in a way that he no longer received from mother's family. Father also reiterated that he would waive child support if he relocated in order to allow mother to become more stable financially and also to allow her to use the extra money for transportation costs related to a long-distance parenting plan.

In closing arguments, father contended that mother should receive significant parenting time but that it was in the children's best interest to have the extensive family support he would receive from his parents and his extended family with childcare, lower housing and utility costs, Illinois's lower cost of living, and the ability to have the consistent and reliable emotional and physical support of his family. Father emphasized that, under the case law, the primary caretaker's need for stability and resources to stabilize both current and long-term needs of the children is a primary consideration in the best interest determination, even when it negatively affects a noncustodial parent's parenting time. Father argued that the children needed the type of reliability and stability offered by the paternal extended family,

and that the relationship between mother and children was still in flux.

Mother, in closing, reiterated that father should not be permitted to move and that she should have unsupervised time with her children. She asserted that she was willing to pay child support and had been willing in the past, but that father turned down her offer. She argued that her current circumstances would make it easier for her to be available for the children and that she would "like for these children to have a way where they are here."

After closing arguments, the court made an oral ruling from the bench:

> "I'm going to order custody to [father]. I'm going to make a couple of observations.

> "First, I've considered all the factors under ORS 107.137. You, [mother] were the primary parent for the majority of the children's lives up to July 2018 *** but I understand why you left the children with him in July of 2018. *** It sounds to me from [mother's] testimony today that you're doing significantly better. *** So [mother's] parenting plan is going to be every other weekend for right now. It's going to start on Friday and end on Sunday; so if in Beaverton 5pm Friday and 5pm Sunday; first weekend supervised and then unsupervised after that."

After outlining a parenting plan that implicitly rejected father's request for relocation, the court opined:

> "With regard to the relocation, [father], I don't think your financial problems are going to be solved by relocating. As I hear the evidence today and I look at this chart you've prepared, you both have had financial struggles for the entire time that you've been trying to be a family together, and frankly, [mother] living in Beaverton even makes this more difficult, because if you lived here, you'd be able to have more parenting time and participate more, but when you live up there, you don't have the ability to do that.

> "So taking into account the daycare expenses that [father] incurs, I get child support of $506 a month. That will address the budget shortfall that you've got in your exhibit. That will give you more money net than you would

make if you made $10 an hour in Illinois, and a little bit less than if you made $14 an hour, but you don't have a job yet so it's a little speculative about what your income would be if you were allowed to move.

"I understand that you would have a family support network there. I totally get it. It's instinct for you to try to go back and do that. Your experience with her, at least in the short-term, from your perspective, hasn't been good, although as I look at the order, one of your jobs as the custodial parent is to be willing and able to facilitate a meaningful relationship with the noncustodial parent.

"I find [mother's] testimony, that she's had some struggles getting her parenting time, credible. As I look at this chart, [father's] behavior was a little bit draconian in terms of managing that. I think [father] did the best you could, which is not bad, but letting you move with the children to Illinois doesn't solve anybody's problems in terms of her having a meaningful relationship with the children.

"The other thing is there's nothing in [father's] plan about handling transportation costs, and if [paternal grandparents] parents are willing to subsidize school costs there, then they should be willing to subsidize them here. So I cannot see the workability of your financial proposal in terms of those considerations."

Subsequently, the court entered a general judgment of marital dissolution, custody, and parenting time that memorialized the court's findings and orders. As relevant to the court's custody and relocation determination, the court made the following written finding in its judgment:

"12.   Pursuant to ORS 107.137, the Court finds that it is in the minor children's best interests that [father] be granted sole custody. Specifically, under the enumerated factors, the Court finds: (1) the minor children have close and strong relationships with each parent, although since separation they has been strongest with [father] given [mother's] absences from caring for the children, (2) the minor children have close and strong relationships with family members from both sides of the family, (3) the minor children were more principally cared for by Father during the history of the parties' relationship, and the children became accustomed to Father providing their primary care from 2018 going forward, (4) Father showed and devoted

more time over the course of time to caregiving for the minor children, (5) Father structured his life around providing primary care for the minor children, and (6) both parents showed strong interest and attitude in the minor children's best interest. *The Court finds that Father, though granted sole custody, may not move from the state of Oregon because (1) Father and Mother moved to and chose to reside in Oregon, and (2) allowing a move could potentially interrupt parenting time between Mother, as non-custodial parent, and the children in the event Mom fully and consistently exercises her parenting time under the ordered parenting plan.*"

(Emphasis added.)

Father appeals that judgment and assigns error to the court's order denying his request to relocate and related parenting plan.

## III.   DISCUSSION

We turn to the merits of father's contentions. When a trial court is charged with determining whether a child may move with one parent to a new location, "the court may consider only the best interests of the child and the safety of the parties." *Cooksey*, 203 Or App at 167. In this case, the sole matter in dispute is whether K and V were "better served" by relocating to Illinois. *Id*. In resolving that dispute, the court is required to apply the same legal standard that governs the "best interests" determinations in custody cases, ORS 107.137(1). *Id*. at 166-67.

ORS 107.137(1) provides that the trial court "shall" consider:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parents in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."

In determining whether relocation is in the children's best interests, a court must consider all of the relevant factors in ORS 107.137(1), bearing in mind that no one factor is dispositive. *Sjomeling*, 251 Or App at 188. Further, the court's best interests determination must also consider the legislative directive to promote strong relationships between children and their noncustodial parents. *See id.* at 189 (noting legislative directive to promote and encourage "extensive contact" between parents and their children and joint parental responsibility for the welfare of children where practicable).

Here, father argues that the court failed to properly apply the "best interests" standard in denying the relocation parenting plan. Specifically, father argues that the trial court legally erred because it did not consider all the relevant factors under ORS 107.137(1)(a) through (f) in making its best interest determination. Rather, father contends, the court focused primarily on factor (f) related to the court's assessment of father's willingness and ability to facilitate a meaningful relationship between mother and the children, to the exclusion of other factors that would serve the father and the *children*'s stability and best interests.

As we explain below, we agree with father that the trial court erred in failing to appropriately consider all the factors under ORS 137.107(1) and reached its determination based on factual findings that are not supported by evidence in the record.

We have previously noted that "relocation cases" are "among the most difficult cases that the courts are called upon to decide." *Hamilton-Waller and Waller*, 202 Or App 498, 501-02, 123 P3d 310 (2005). "It is difficult to formulate a legal test to govern when it is appropriate to allow a custodial parent to move with a child," and it is "also hard to apply a standard formula to this type of case because there are numerous competing interests and issues and so many variations in particular circumstances." *Id.* at 501. "The custodial parent has an interest in moving on with his or her

life and, when finances or personal relationships make it desirable to move, in being able to move, as well as an interest in making important decisions regarding the children, such as where they are going to live," but noncustodial parents have an interest in having the opportunity to maintain a meaningful relationship with their children and having reasonable access to and time with the children to maintain that relationship. *Id.* And, "perhaps of most importance, the children have an interest in having a situation that allows the optimum relationship with each parent under the circumstances and is in their overall best interests." *Id.* (citing ORS 107.137(1) (primary consideration in custody determinations is best interests of the children)).[2]

We have repeatedly noted that no one factor under ORS 107.137(1) prevails and that a court must assess all the required statutory considerations and weigh the pertinent considerations in determining what serves the children's best interests. *See, e.g.*, *Sjomeling,* 251 Or App at 192 (concluding that the trial court's determination that the stability and employment of the primary custodial parent is a critical piece of a child's success that outweighed the cost of relocation that would alter the children's time with father, the noncustodial parent).

In *Davison v. Schafer*, we explained that the custodial parent's decision to move was not a proper consideration

---

[2] For reasons similar to those we discussed in *Hamilton-Waller*, this is an area that may well benefit from additional legislative guidance as to the factors that are appropriately considered in the context of relocation. *See, e.g.*, Linda D. Elrod, *Current Trends in Custody Relocation* 10-11 (written materials from ABA Council of Appellate Staff Attorneys Seminar, July 30, 2005; on file with Professor Elrod at Washburn University) (setting out 10 different factors to consider related to relocation, as well as eight additional factors specifically related to the child's best interest in that circumstance). *See also Hamilton-Waller*, 202 Or App at 501 n 3 ("The struggle to find the best approach to 'move away' cases is not limited to Oregon or to the judicial arena. *E.g.*, *Ciesluk and Ciesluk*, 113 P3d 135 (Colo 2005); *Bates v. Tesar*, 81 SW3d 411 (Tex App 2002); *Baures v. Lewis*, 167 NJ 91, 770 A2d 214 (2001); *Ireland v. Ireland*, 246 Conn 413, 717 A2d 676 (1998); *Burgess v. Burgess*, 13 Cal 4th 25, 51 Cal Rptr 2d 444, 913 P2d 473 (1996); *Tropea v. Tropea*, 87 NY2d 727, 642 NYS2d 575, 665 NE2d 145 (1996); Arthur B. LaFrance, *Child Custody and Relocation: A Constitutional Perspective*, 34 U Louisville J Fam L 1 (1996) (reviewing in detail how child custody relocation cases have been analyzed nationally and suggesting that courts should place more emphasis on the constitutional rights of custodial parents to move); Carol S. Bruch and Janet M. Bowermaster, *The Relocation of Children and Custodial Parents: Public Policy, Past and Present*, 30 Fam L Q 245 (1996))."

in the best-interest analysis of what parenting plan best served the children's interest. 308 Or App 513, 519, 479 P3d 1108 (2021). We explained that

> "parents sometimes relocate * * * and a move is not itself inherently problematic. *See, e.g., Finney-Chokey and Chokey*, 280 Or App 347, 363-64, 381 P3d 1015 (2016) (benefits to child of move to United Kingdom outweighed damage to relationship with father); *Kness and Kness*, 281 Or App 577, 581, 383 P3d 971 (2016) (mother's role as primary caregiver and child's close relationship with stepfather weighed in favor of mother's request to move from Klamath Falls, where father lived, to Medford because stepfather relocated to Medford)."

*Id*. at 520-21.

We further explained in *Davison* that a court may consider lifestyle choices, including a decision to move, in the best-interests analysis "'*only* if [those choices] will or may cause damage to the child.' *Miller and Miller*, 269 Or App 436, 443, 345 P3d 472 (2015) (emphasis in original)." 308 Or App at 520. In *Miller*, we opined that the fact that "a parent's lifestyle choices make coparenting with the noncustodial parent more difficult" is not relevant to the determination of "damage" to a child. 269 Or App at 444. Specifically, the logistical difficulty resulting from a move "is a circumstance that is true for every noncustodial parent where the father and mother do not live in close proximity, and it is not a circumstance, in and of itself, that bears on whether the custodial parent is willing and able to foster a positive relationship with the noncustodial parent." *Id*. at 446. Thus, in *Miller*, we rejected the trial court's consideration of the mother's move 15 miles away from the father as part of the best-interests analysis in making its custody determination.

In this case, we agree with father that the court erred by looking only at the effect that father's relocation would have on mother's parenting time and by discounting the benefits to the children as a result of father's relocation to Illinois. In the judgment, the court stated that it had considered all the factors under ORS 107.137 in reaching its custody decision, but the court did not explain whether or how those same factors might bear on the court's decision

regarding relocation and parenting time. On that issue, the court focused on just two factors: that "(1) Father and Mother moved to and chose to reside in Oregon, and (2) allowing a move could potentially interrupt parenting time between Mother, as non-custodial parent, and the children in the event Mom fully and consistently exercises her parenting time under the ordered parenting plan."

As our case law explains, those factors cannot be considered in isolation to determine parenting time. The court, however, appears to have given undue weight to maintaining geographic proximity of the parents, based, in part, on an unsupported factual finding: that relocation would not improve financial stability for father and the children or provide different educational opportunities. In its oral findings, the court stated, "I don't think your financial problems are going to be solved by relocating" and suggested that because father's family was "willing to subsidize school costs there [in Illinois], then they should be willing to subsidize them here." Although it may have been true that father's financial problems would not be "solved," the only evidence in the record on that topic is that father's financial and other family support would be improved by a move to Illinois, where he had more childcare options and more financial support. To the extent that the court found that father's family "should be willing" to subsidize school expenses in Oregon, there is no evidence in the record on that point; the only evidence about father's family paying for school concerned a school associated with the church where both of father's parents worked.[3]

In light of those unsupported factual determinations regarding the lack of any benefits of relocation, and the lack of any explanation of other factors relating to relocation, we conclude that the court impermissibly focused on the geographic proximity of the parents, which we have repeatedly stated should not be determinative in and of itself. *See Slaughter and Harris*, 292 Or App 687, 692, 425 P3d 770 (2018) (reiterating that point and citing *Duckett* and stating

---

[3] We also note that, to the extent the court found that "there's nothing in [father's] plan about handling transportation costs," father had testified that he was willing to waive child support in order for mother to have more financial stability and to aid in paying for transportation costs.

that, "[i]f maintaining a close geographic relationship with both parents were controlling, no primary parent would be allowed to move away over the objection of the other parent without losing custody of the child." (Emphasis in original.)). Accordingly, we reverse and remand for the court to reconsider father's proposed relocation parenting plan in consideration of all the factors under ORS 107.137(1), to determine what parenting plan serves the children's best interests.[4]

       Reversed and remanded.

---

[4] We recognize that the trial took place in 2020 and that much may have changed since then with regard to the parents' and children's circumstances. Our decision should not be understood to foreclose additional arguments or evidence that account for the parties' current circumstances in developing a parenting plan based on the children's best interests.