No. 142       February 26, 2025       215

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

M. E.,
fka M. A. K.,
*Petitioner-Respondent,*

*v.*

Jason White KIRK,
*Respondent-Appellant.*

Malheur County Circuit Court
20DR17522; A180273

Erin K. Landis, Judge.

Argued and submitted April 22, 2024.

James A. Schaeffer argued the cause for appellant. Also on the brief was James A. Schaeffer, Attorney LLC.

No appearance for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

**MOONEY, S. J.**

In this domestic relations case, father appeals a general judgment of dissolution awarding mother sole legal custody of their two minor children, child support, and spousal support. He assigns error to the trial court's analysis of the ORS 107.137 custody factors, its related decisions concerning parenting time and child support, and its calculation of spousal support. Mother does not appear on appeal. We affirm.

We decline father's request for *de novo* review because this case is not "exceptional" or otherwise appropriate for such review. ORS 19.415(3)(b); ORAP 5.40(8)(c), (d). In reviewing the dissolution judgment, we are bound by the trial court's implicit and explicit findings of historical facts, as long as they are supported by the record. *Yocum and Pockett*, 328 Or App 613, 614, 537 P3d 979 (2023). We state the relevant facts in accordance with that standard, providing only those facts necessary to explain our decision.

Mother and father were married in August 2012. They had two children during the course of their marriage, and father had custody of an older child from a prior relationship. The parties separated in May 2020, when mother sought a restraining order against father and left the family home with the children. The initial restraining order was dismissed at the conclusion of a contested case hearing. Mother petitioned for dissolution of marriage and all contested issues were resolved following a trial.[1]

The trial court made findings and awarded legal custody of the children to mother. The court's custody findings, as memorialized in the judgment, were properly structured in accordance with the framework of ORS 107.137:

"A. <u>Emotional ties between the children and other family members</u>. This particular factor weighs heavily in favor of [father]. The children in this case have a half brother ***. There is an existing relationship there. It's a relationship that on the whole is beneficial and in the children's

---

[1]  The division of assets and debts, spousal support, child support, child custody, and parenting time were all contested.  Father does not appeal the trial court's division of assets and debts and, therefore, that aspect of the judgment is not before us.

best interests and needs to be built upon. \*\*\* It's also clear that these children do have more meaningful relationships with family members on [father's] side of the family. \*\*\*

"B. <u>The interests of the parties in and attitude toward the children</u>. Both parties did express great interests in the children's lives and both parties seem to be very vested in these children. However, in this case, this particular factor favors [mother]. [Mother] essentially put her career and education on hold, for the most part, to take care of the children and acts as primary care giver. There was some argument made that that wasn't so much the case, that it was more that she wasn't motivated to pursue her education or work. The Court did not find [father's] argument to be particularly compelling. \*\*\* There was also some argument from [father] that [mother] was not engaged as a parent; the Court did not find that argument to be particularly credible either. The Court did not find particularly credible [father's] argument that he was able to work from home in the type of career that he has and be more of a parental figure than [mother]. \*\*\*

"C. <u>The desire of continuing existing relationships</u>. Both of these parents have good relationships with the children \*\*\*. \*\*\* [T]he Court thinks that both parties provided a positive influence for these children and both of these parents, the desirability of continuing that relationship between the parents and the children is there. \*\*\*

"D. <u>The abuse of one parent by the other</u>. This is a factor that weighed in favor of [mother]. The evidence in this case was pretty clear. [Father] subjected [mother] to abuse during the marriage. He admitted to as much. He admitted to throwing coleslaw at her during a heated argument in the kitchen of the family home. And while this may not have been an instance of hands-on physical abuse, it most certainly is abuse. \*\*\*

"E. <u>Preference for the primary care giver</u>. \*\*\* The Court finds that [mother] was the primary care giver \*\*\*. And where in this case [mother] is a fit care giver, the Court found that this factor weighed in [mother's] favor.

"F. <u>Willingness and ability for each parent to facilitate a close and continuing relationship with the other parent</u>. This factor weighed rather heavily for [father]."

(Underscoring in original.)

The court's award of custody was made subject to parenting time for father, which includes every other weekend plus two phone calls a week during the school year, split holiday time, and alternating two-week blocks in the summer months. Monthly child support in the amount of $1,260, to be paid by father, was calculated in accordance with the Oregon Child Support guidelines, OAR 137-050-0700 to 137-050-0765.

Because "[a] trial court exercises discretion in making a custody award and is in a better position than an appellate court to weigh the factors that enter into that determination[,]" *Nice v. Townley*, 248 Or App 616, 620-21, 274 P3d 227 (2012), we review the "trial court's best interests determination * * * for abuse of discretion," *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012). We will reverse the trial court's custody determination "only if it is not a legally permissible one." *Ward and Ward*, 331 Or App 391, 394-95, 546 P3d 318 (2024) (internal quotation marks omitted). We have reviewed the record and conclude that the trial court adequately applied the statutory custody factors and that it reached a legally permissible custody determination based on that record.

We turn briefly to father's argument that the trial court did not properly consider the "legal significance" that awarding legal custody to mother would have on the children's relationship with their older half-sibling. "Underlying the statutory requirements [of ORS 107.137] is a strong preference for keeping siblings together." *McBrayer v. Randolph*, 191 Or App 553, 558, 560, 83 P3d 936 (2004). That preference is based on the presumption that it is in a child's best interest "to grow up with the other child or children in the family." *Id.* at 560 (footnote omitted). But that presumption can be rebutted by "overriding reasons" that demonstrate that the children would be better served by separation of the siblings. *Id.* Where that presumption is rebutted, and when all other statutory factors are assessed and, on balance, weigh in favor of a custody decision that separates siblings, the trial court is authorized to enter such a decree. *Id.*

We have implicitly recognized the importance of sibling relationships, which include siblings of the half-blood in the domestic relations context as well. For example, in *Ringler*

*and Ringler*, 221 Or App 43, 53, 188 P3d 461 (2008), we noted that the "children are closely bonded to their [maternal] half-siblings and have a relationship with mother's family, whom they see regularly. Awarding custody to mother would facilitate those relationships." We analyzed those relationships in the context of the statutory factor concerning "[t]he emotional ties between the child and other family members." ORS 107.137(1)(a). As we explained in *McBrayer*, in cases where we have separated siblings, we considered the "nature of the relationship between the children and the children's individual preferences." *McBrayer*, 191 Or App at 560. We distill from the statutory scheme and related case law that sibling relationships are important and must be considered in the custody determination—whether such relationships are of the half or whole blood. But sibling relationships are not dispositive of custody—whether of the half or whole blood.

Having reviewed the record and the trial court's findings, we conclude that it considered and weighed the children's relationship with their older half-sibling along with all the other statutorily required factors and that its decision to award custody to mother was a legally permissible outcome. The court did not abuse its discretion when it awarded mother sole legal custody of the children.

Father makes two additional arguments that build upon his assertion that the trial court's custody decision was erroneous. First, he challenges the parenting time plan, adding that the trial court also failed to make adequate findings, orally or in writing, to support the ordered plan. We review the parenting time plan ordered by the trial court first for legal error to ensure that the court "applied the correct legal standard" when it determined the plan that would serve the children's best interests, and then we review that best interest determination for abuse of discretion. *Davison and Schafer*, 308 Or App 513, 518, 479 P3d 1108 (2021) (internal quotation marks omitted). Second, father argues that "because the parenting plan was not correctly decided, the trial court also erred in calculating child support." We review the trial court's determination of child support for legal error. *Yocum*, 328 Or App at 614.

As we have already explained, the court's "best interest" determination was not in error. The trial court did not abuse its discretion in awarding legal custody to mother. And, because the court developed the parenting time plan considering "the best interests of the child[ren] and the safety of the parties," ORS 107.102(5)(b), it also did not abuse its discretion in creating the parenting time plan that it awarded to father. We also conclude that the child support award, calculated by the trial court in accordance with the uniform child support formula and its consideration of the factors listed in ORS 25.275, was not ordered in error.

Finally, father also challenges the trial court's award of spousal support to mother. He argues that the court failed to properly consider evidence that mother's plan for her education was uncertain, that she had options for employment, and that she had failed to "follow through" on her career in the past. ORS 107.105(1)(d) permits the trial court to award spousal support in "'an amount of money for a period of time as may be just and equitable[.]'" *Morgan and Morgan*, 269 Or App 156, 166, 344 P3d 81, *rev den*, 357 Or 595 (2015) (brackets in original). We review the trial court's spousal support award and its underlying "just and equitable" determination for abuse of discretion. *Id.*

The court awarded mother monthly spousal support in the amount of $1,800 for four years, then a reduced monthly amount of $900 for another two years, at which point spousal support ends. That award, which includes transitional and maintenance support, was based on (among other things) the following findings: (1) that there is "a huge disparity of income between" the parties; (2) that mother "was out of the job market and work force for an extended period" in order to be "a stay-at-home parent[;]" (3) that mother will require training "before she can begin a career in the dental assisting profession" and that even after she begins that work, the income disparity between the parties will continue; (4) that father works in technology where he has "extensive work experience" and has "training and employment skills [that] are much greater" than mother's; and (5) that, although father has greater financial needs than mother, that is because he "cho[se] [to] purchase

a $550,000 home with a $3,700 month mortgage" during the dissolution proceedings. We conclude that the trial court did not abuse its discretion on that record.

Affirmed.